IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

THOMAS JOHN HEILMAN,

        Plaintiff,                No. 2:11-cv-0042-JAM-EFB P

        vs.

C. CHERNISS, et al.,

        Defendants.           <u>FINDINGS AND RECOMMENDATIONS</u>

_____/

      Plaintiff is a state prisoner proceeding without counsel in an action brought under 42 U.S.C. § 1983.  This action proceeds on plaintiff's claims that defendants Cherniss, Lesane, and Forncrook ("defendants"), through their alleged pat-down searches, sexual misconduct, and/or response to plaintiff's complaints of the same, violated plaintiff's First, Fourth, Eighth, and Fourteenth Amendment rights.  Pending before the court is Forncrook's motion to dismiss pursuant to Federal Rule of Civil Procedure ("Rule") 12(b), on the ground that plaintiff failed to exhaust available administrative remedies prior to filing suit.  ECF No. 55.  Also pending is Cherniss, Lesane, and Forncrook's motion for summary judgment.  ECF No. 54.  For the reasons explained below, it is recommended that Forncrook's motion to dismiss be denied, and that defendants' motion for summary judgment be granted in part and denied in part.

/////

## I.      The Complaint

This action proceeds on plaintiff's verified complaint.  ECF No. 1.  Plaintiff alleges that from March to May of 2010, defendant Cherniss subjected him to harassing searches that became more invasive over time.  *Id.* § II, ¶¶ 1, 4.  Plaintiff also claims that Cherniss made "sexually threatening" comments, including the statement that he could put his hands on plaintiff "anywhere he wants at any time."  *Id.*

Plaintiff describes three instances of Cherniss's allegedly inappropriate searches.  During one search, Cherniss allegedly put his hand in plaintiff's back pant pocket, and "rubbed plaintiff's buttock in a sexually demeaning manner."  *Id.* § II, ¶ 5.  During another search, Cherniss allegedly "ran his hand up the inside of plaintiff's left leg and rubbed and fondled plaintiff's testicles and genital area."  *Id.* § II, ¶ 6.  When plaintiff objected, Cherniss allegedly "ordered plaintiff to be quiet and ran his hand up the other leg and again touched and rubbed the same area of plaintiff's genitals."  *Id.*

The third search allegedly occurred on May 17, 2010.  *Id.* § II, ¶ 9.  Plaintiff claims that defendant Lesane watched as Cherniss moved his hand up the inside of plaintiff's left leg and "rubbed plaintiff's testicles and penis in an inappropriate provocative manner."  *Id.* § II, ¶ 10.  When plaintiff objected to the search as inappropriate, Lesane allegedly ordered plaintiff to turn back around, stating that Cherniss had the right to search plaintiff any way he liked.  *Id.* § II, ¶¶ 10-11.  Cherniss allegedly resumed his search by fondling plaintiff's testicles and groin area, and moving his hands up and down, "into plaintiff's buttocks."  *Id.* § II, ¶ 12.  At this point, plaintiff allegedly informed Cherniss and Lesane that he intended to file an administrative grievance regarding Cherniss's "sexual misconduct."  *Id.* § II, ¶ 13.  Plaintiff allegedly filed a grievance on May 31, 2010.  *Id.* § II, ¶ 14.

/////

/////

/////

1    Plaintiff claims that Cherniss retaliated against him for filing a grievance by issuing a

2    false rules violation report, charging *plaintiff* with sexual misconduct on May 17, 2010.  *Id.* § II,

3    ¶¶ 28, 30.  Plaintiff also alleges that Lesane retaliated against him when Lesane allowed Cherniss

4    to resume his search of plaintiff on May 17, and by "turning a blind eye" to Cherniss's allegedly

5    retaliatory rules violation report.  *Id.* § II, ¶ 29.

6    The hearing on the rules violation report allegedly took place on June 19, 2010, and

7    defendant Forncrook was the senior hearing officer.  *Id.* § II, ¶¶ 23, 27.  Plaintiff alleges that

8    Forncrook found him guilty and assessed 30 days of credits.  *Id.* § II, ¶ 34.  Forncrook allegedly

9    warned plaintiff to "be careful" with what he writes about Cherniss.  *Id.* § II, ¶ 27.  Plaintiff

10   claims that Forncrook retaliated against him for filing a grievance by refusing to call Lesane as a

11   witness, encouraging Cherniss not to answer plaintiff's questions, encouraging plaintiff's staff

12   assistant not to assist plaintiff, and failing to dismiss the disciplinary charges against plaintiff.

13   *Id.* § II, ¶¶ 23, 27, 30, 31, 33.

14   Plaintiff claims that Cherniss and Lesane violated his Eighth Amendment right to be free

15   from cruel and unusual punishment when they subjected him to "sexually threatening" and

16   harassing comments, and inappropriate searches.  They also allegedly violated his Fourth

17   Amendment right to be free from unreasonable searches.  Plaintiff also claims that Cherniss,

18   Lesane and Forncrook each retaliated against him for filing a prison grievance, in violation of his

19   First Amendment rights, and that Forncrook also violated his Fourteenth Amendment right to

20   due process at the hearing on the rules violation report.  *See id.* § I (summary of plaintiff's

21   claims[1]).

22   /////

23   /////

24

25   ────────────────

     [1] Although the complaint sets forth seven separate "claims" for relief, the factual
26   allegations therein are redundant and only support the First, Fourth, Eighth, and Fourteenth
     Amendment claims identified above.

1    **II.    Exhaustion**[2]

2          Defendant Forncrook contends that plaintiff did not exhaust administrative remedies for

3    any claims asserted against him.[3]  As discussed below, Forncrook fails to carry his burden of

4    demonstrating the absence of exhaustion, and his motion must be denied.

5          The Prison Litigation Reform Act ("PLRA") provides that "[n]o action shall be brought

6    with respect to prison conditions [under section 1983 of this title] until such administrative

7    remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  "Prison conditions" subject to

8    the exhaustion requirement have been defined broadly as "the effects of actions by government

9    officials on the lives of persons confined in prison . . . ."  18 U.S.C. § 3626(g)(2); *Smith v.*

10   *Zachary*, 255 F.3d 446, 449 (7th Cir. 2001); *see also Lawrence v. Goord*, 304 F.3d 198, 200 (2d

11   Cir. 2002).  To satisfy the exhaustion requirement, a grievance must alert prison officials to the

12   claims the plaintiff has included in the complaint, but need only provide the level of detail

13   required by the grievance system itself.  *Jones v. Bock*, 549 U.S. 199, 218-19 (2007); *Porter v.*

14   *Nussle*, 534 U.S. 516, 524-25 (2002) (purpose of exhaustion requirement is to give officials

15   "time and opportunity to address complaints internally before allowing the initiation of a federal

16   case").

17         Prisoners who file grievances must use a form provided by the California Department of

18   Corrections and Rehabilitation, which instructs the inmate to describe the problem and outline

19   the action requested.  The grievance process, as defined by California regulations, has three

20

21         [2] Defendant Forncrook's exhaustion motion is addressed first, as exhaustion it is a
22   prerequisite to filing suit.  *See* 42 U.S.C. § 1997e(a) ("No action shall be brought with respect to
     prison conditions . . . until such administrative remedies as are available are exhausted."); *see*
23   *also McKinney v. Carey*, 311 F.3d 1198, 1199 (9th Cir. 2002) (per curiam) (requiring dismissal
     where prisoner fails to exhaust administrative remedies before filing suit and tries to do so while
24   case is pending).

25         [3] On October 18, 2012, the court provided notice to plaintiff of the requirements for
     opposing a motion to dismiss for failure to exhaust available administrative remedies.  *See*
26   *Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Stratton v. Buck*, 697 F.3d 1004, 1006 (9th Cir.
     Sept. 2012); *Wyatt v. Terhune*, 315 F.3d 1108, 1115, 1120 n.15 (9th Cir. 2003).

levels of review to address an inmate's claims, subject to certain exceptions.  *See* Cal. Code Regs. tit. 15, § 3084.7.  Administrative procedures generally are exhausted once a plaintiff has received a "Director's Level Decision," or third level review, with respect to his issues or claims. *Id.* § 3084.1(b).

Proper exhaustion of available remedies is mandatory, *Booth v. Churner*, 532 U.S. 731, 741 (2001), and "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules[.]"  *Woodford v. Ngo*, 548 U.S. 81, 90 (2006).  For a remedy to be "available," there must be the "possibility of some relief . . . ."  *Booth*, 532 U.S. at 738.  Relying on *Booth*, the Ninth Circuit has held:

> [A] prisoner need not press on to exhaust further levels of review once he has received all "available" remedies at an intermediate level of review or has been reliably informed by an administrator that no remedies are available.

*Brown v. Valoff*, 422 F.3d 926, 935 (9th Cir. 2005).

Failure to exhaust is an affirmative defense in the sense that defendants bear the burden of proving plaintiff did not exhaust available remedies.  *Wyatt*, 315 F.3d at 1119.  To bear this burden:

> a defendant must demonstrate that pertinent relief remained available, whether at unexhausted levels of the grievance process or through awaiting the results of the relief already granted as a result of that process. Relevant evidence in so demonstrating would include statutes, regulations, and other official directives that explain the scope of the administrative review process; documentary or testimonial evidence from prison officials who administer the review process; and information provided to the prisoner concerning the operation of the grievance procedure in this case . . . . With regard to the latter category of evidence, information provided [to] the prisoner is pertinent because it informs our determination of whether relief was, as a practical matter, "available."

*Brown*, 422 F.3d at 936-37 (citations omitted).

To support his failure to exhaust argument, Forncrook relies solely on plaintiff's complaint.  First, Forncrook points to plaintiff's allegation that he exhausted his administrative remedies as to all defendants.  Forncrook then discusses the two administrative appeals attached to plaintiff's complaint.  According to Forncrook, these administrative appeals would not have

1    alerted prison officials to the claims now asserted against Forncrook, and therefore, the

2    administrative remedies for those claims are not exhausted.  Forncrook's conclusion, however,

3    cannot be supported by merely referencing plaintiff's complaint.  Though plaintiff alleged in his

4    complaint that he had exhausted his administrative remedies, he was not required to prove,

5    through his pleading, that he had in fact, exhausted.  Moreover, plaintiff did not allege that he

6    had attached *all* relevant appeals to his complaint, nor did he otherwise imply that he had.  Thus,

7    plaintiff's purported failure to attach a grievance demonstrating exhaustion for his claims against

8    Forncrook does not mean that the administrative remedies for those claims were never

9    exhausted.  As noted, failure to exhaust is an affirmative defense, which defendant has the

10   burden of pleading and proving.  In relying solely on plaintiff's complaint, Forncrook has not

11   met his burden of showing that plaintiff could have, but did not, pursue administrative remedies

12   for the claims against Forncrook.  Accordingly, Forncrook's motion must be denied.

13   **III.    Summary Judgment**

14          **A.    Standard**

15          Summary judgment is appropriate when there is "no genuine dispute as to any material

16   fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  Summary

17   judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant

18   to the determination of the issues in the case, or in which there is insufficient evidence for a jury

19   to determine those facts in favor of the nonmovant.  *Crawford-El v. Britton*, 523 U.S. 574, 600

20   (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-50 (1986); *Nw. Motorcycle Ass'n v.

21   U.S. Dep't of Agric.*, 18 F.3d 1468, 1471-72 (9th Cir. 1994).  At bottom, a summary judgment

22   motion asks whether the evidence presents a sufficient disagreement to require submission to a

23   jury.

24          The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims

25   or defenses.  *Celotex Cop. v. Catrett*, 477 U.S. 317, 323-24 (1986).  Thus, the rule functions to

26   "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for

1    trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986)

2    (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).  Procedurally,

3    under summary judgment practice, the moving party bears the initial responsibility of presenting

4    the basis for its motion and identifying those portions of the record, together with affidavits, if

5    any, that it believes demonstrate the absence of a genuine issue of material fact.  *Celotex*, 477

6    U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc).  If the moving

7    party meets its burden with a properly supported motion, the burden then shifts to the opposing

8    party to present specific facts that show there is a genuine issue for trial.  Fed. R. Civ. P. 56(e);

9    *Anderson.*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

10           A clear focus on where the burden of proof lies as to the factual issue in question is

11   crucial to summary judgment procedures.  Depending on which party bears that burden, the party

12   seeking summary judgment does not necessarily need to submit any evidence of its own.  When

13   the opposing party would have the burden of proof on a dispositive issue at trial, the moving

14   party need not produce evidence which negates the opponent's claim.  *See e.g., Lujan v. National*

15   *Wildlife Fed'n*, 497 U.S. 871, 885 (1990).  Rather, the moving party need only point to matters

16   which demonstrate the absence of a genuine material factual issue.  *See Celotex*, 477 U.S. at 323-

17   24 (1986). ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive

18   issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings,

19   depositions, answers to interrogatories, and admissions on file.'").  Indeed, summary judgment

20   should be entered, after adequate time for discovery and upon motion, against a party who fails

21   to make a showing sufficient to establish the existence of an element essential to that party's

22   case, and on which that party will bear the burden of proof at trial.  *See id.* at 322.  In such a

23   circumstance, summary judgment must be granted, "so long as whatever is before the district

24   court demonstrates that the standard for entry of summary judgment . . . is satisfied."  *Id.* at 323.

25           To defeat summary judgment the opposing party must establish a genuine dispute as to a

26   material issue of fact.  This entails two requirements.  First, the dispute must be over a fact(s)

that is material, i.e., one that makes a difference in the outcome of the case.  *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.").  Whether a factual dispute is material is determined by the substantive law applicable for the claim in question.  *Id.*  If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment.  "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."  *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine.  In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question.  Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim.  Conclusory allegations, unsupported by evidence are insufficient to defeat the motion.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir.1989).  Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial.  *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076.  More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented."  *Anderson*, 477 U.S. at 248, 252.  Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility.  It believes the opposing party's evidence, and draws inferences most favorably for the opposing party.  *See id.* at 249, 255; *Matsushita*, 475 U.S. at 587.  Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences.  *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir.1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322).  If reasonable minds could differ on material facts at issue, summary judgment is inappropriate.  *See Warren v. City of Carlsbad*, 58 F.3d 439, 441

(9th Cir. 1995).  On the other hand, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'"  *Matsushita*, 475 U.S. at 587 (citation omitted); *Celotex*, 477 U.S. at 323 (If the evidence presented and any reasonable inferences that might be drawn from it could not support a judgment in favor of the opposing party, there is no genuine issue).  Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that is determinative of the outcome of the case.

Defendants' motion for summary judgment included a notice to plaintiff informing him of the requirements for opposing a motion pursuant to Rule 56 of the Federal Rules of Civil Procedure.  *See Woods v. Carey*, 684 F.3d 934 (9th Cir. 2012); *Rand v. Rowland*, 154 F.3d 952, 957 (9th Cir. 1998) (en banc); *cert. denied*, 527 U.S. 1035 (1999); *Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988).

**B.    Discussion**

As noted, plaintiff claims that Cherniss and Lesane violated his First, Fourth and Eighth Amendment rights, and that Forncrook violated his First and Fourteenth Amendment rights. Each of those claims is addressed below.

**1.    Fourth and Eighth Amendment Claims Against Cherniss and Lesane**

Plaintiff claims that Cherniss violated his Eighth Amendment right to be free from cruel and unusual punishment when he subjected plaintiff to "sexually threatening" and harassing comments and inappropriate searches for contraband.  Cherniss also allegedly violated plaintiff's Fourth Amendment right to be free from unreasonable searches.  Plaintiff seeks to hold Lesane liable for allegedly "condoning" Cherniss's conduct.

A prison official violates the Eighth Amendment's proscription of cruel and unusual punishment where he or she deprives a prisoner of the minimal civilized measure of life's necessities with a "sufficiently culpable state of mind."  *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).  To state such an Eighth Amendment claim, a prisoner must allege facts showing that (1) the defendant prison official's conduct deprived him or her of the minimal civilized measure of

1   life's necessities and (2) that the defendant acted with deliberate indifference to the prisoner's

2   health or safety. *Id.* at 834.

3        Although prisoners have a right to be free from sexual abuse, the Eighth Amendment's

4   protections do not necessarily extend to mere verbal sexual harassment. *Austin v. Terhune*, 367

5   F.3d 1167, 1171 (9th Cir. 2004); *Watison v. Carter*, 668 F.3d 1108, 1113 (9th Cir. 2012) ("the

6   exchange of verbal insults between inmates and guards is a constant, daily ritual observed in this

7   nation's prisons of which we do not approve, but which do not violate the Eighth Amendment."

8   (internal quotation marks omitted)).  A guard's physical sexual assault of an inmate, however, is

9   "offensive to human dignity" and may violate the Eighth Amendment. *Schwenk v. Hartford*, 204

10   F.3d 1187, 1196-97 (9th Cir. 1987).  For an allegedly inappropriate body search to violate the

11   Eighth Amendment, the plaintiff must demonstrate that the search amounted to the unnecessary

12   and wanton infliction of pain. *Jordan v. Gardner*, 986 F.2d 1521, 1525-26 (9th Cir. 1993)

13   (concluding that "momentary discomfort" is not enough).  In the absence of a preexisting mental

14   condition or a particularly invasive search, the humiliation allegedly suffered because of

15   unwanted physical contact from a correctional officer "does not rise to the level of severe

16   psychological pain required to state an Eighth Amendment claim." *Watison*, 668 F.3d at 1112-

17   14 (affirming dismissal of Eighth Amendment claim against correctional officer who allegedly

18   entered inmate's cell while on the toilet, and rubbed his thigh against the inmate's thigh, while

19   smiling and laughing).

20        For purposes of the Fourth Amendment, searches of prisoners must be reasonable to be

21   constitutional. *Nunez v. Duncan*, 591 F.3d 1217, 1227 (9th Cir. 2010).  "The test of

22   reasonableness under the Fourth Amendment is not capable of precise definition or mechanical

23   application.  In each case it requires a balancing of the need for the particular search against the

24   invasion of personal rights that the search entails.  Courts must consider the scope of the

25   particular intrusion, the manner in which it is conducted, the justification for initiating it, and

26   /////

the place in which it is conducted." *Id.* (quoting *Bell v. Wolfish*, 441 U.S. 520, 559 (1979) (emphasis added)).

Defendants contend that plaintiff's Fourth and Eighth Amendment claims are meritless because plaintiff cannot identify any sexually suggestive comments from Cherniss, and because plaintiff's allegations amount to nothing more than an officer conducting routine body searches in accordance with prison policy.[4]  *See* ECF No. 54 at 8-11.  As discussed below, there is no genuine dispute as to whether defendants' conduct was unreasonable in violation of the Fourth Amendment, or amounted to the unnecessary and wanton infliction of pain in violation of the Eighth Amendment.

Cherniss explains that during the relevant time period, he was a correctional officer at the California Medical Facility, and was assigned to a security checkpoint area for plaintiff's housing unit.  ECF No. 54-6 ("Cherniss Decl.") ¶¶ 1-2.  It was Cherniss's job to monitor inmate movement through the checkpoint in order to prevent contraband from either going into or coming out of the housing unit.  *Id.* ¶ 4.  One of the methods Cherniss used to monitor for contraband was random clothed body searches of inmates.  *Id.*

On May 17, 2010, Cherniss searched approximately 30-40 inmates, including plaintiff. *Id.* ¶ 5.  Cherniss claims that he never sexually harassed plaintiff or made sexually suggestive comments toward him, and that the search was not sexual in nature.  *Id.* ¶¶ 8, 16.  Cherniss explains that in feeling plaintiff for contraband, he "patted" plaintiff's legs from the back pockets to the ankles, "swept" the front area of plaintiff's pants to feel plaintiff's pockets, and also "swept" from the bottom of the groin back to the buttocks.  *Id.* ¶ 7.  Cherniss claims that the search was consistent with the standard searching procedure that he was taught at the

---

[4] Defendants did not substantively address plaintiff's Fourth Amendment claim in their motion, but did address it in their reply brief.  Because plaintiff was not given an opportunity to respond to the Fourth Amendment argument through his opposition brief, the court will grant plaintiff's request to respond through his December 17, 2012 surreply.  *See* ECF Nos. 68, 71. Defendants' objection to plaintiff's surreply (ECF No. 69) is overruled.

Correctional Officer Training Academy. *Id.* ¶¶ 6, 8.  That procedure calls for contact with an inmate's groin and buttocks to feel for the presence of contraband.  *See id.*, Ex. A (instructing officer to check "high into" the inmate's left groin and right groin, to "cup" the groin, to use a "firm touch" along the arms, hands, and legs, and to also check the left and right "buttock area").  According to Sgt. D. Sheufelt, an instructor of clothed body searches at the correctional officer academy, Cherniss's search describes "a systematic search very similar to the search taught" to new officers.  ECF No. 54-9 ("Sheufelt Decl.") ¶¶ 7-8.

Plaintiff contends that the May 17 search was the most "intrusive" of the three searches alleged in his complaint.  ECF No. 63 at 10.  He claims that the search went beyond a mere "sweeping of the groin" and was a "brutal," "heinous," and "perverted" "sexual assault." *Id.* at 7, 9-10, 12, 15.  Plaintiff purports to submit declarations from various inmate witnesses who can corroborate his allegations that a sexual assault occurred.  ECF No. 62 at No. 53; ECF No. 63 at 11.  Only one of the declarations, however, is from an inmate who claims to have witnessed a search of plaintiff by Cherniss.  The inmate, B. Bradley, states that in April 2010, he saw plaintiff being searched by Cherniss, and heard plaintiff tell Cherniss "that it was inappropriate to grab his genitals during a search."[5]  ECF No. 63, Ex. 2 at 62.  Bradley does not claim to have witnessed any inappropriate touching.  Regardless, plaintiff maintains that Cherniss "groped, grabbed, and fondled" his penis and scrotum "for up to 15 seconds."  ECF No. 63 at 15; *see also id.*, Ex. 11 ("Pl.'s Dep.") at 59:7-24.  He further claims that Cherniss "finished his sexual assault /////

---

[5] Defendants' objection to the remainder of the Bradley declaration as inadmissible character evidence is sustained.  *See* ECF No. 65-2.  In addition, the court sustains defendants' same objections to plaintiff's declaration and the declarations of inmates Overton, Cordero, and Patillo.  *See id.*  Overton, Cordero, and Patillo each state that Cherniss inappropriately touched their genitals and made sexually inappropriate comments during a search.  *See also* ECF No. 63, Ex. 6 at 93 (plaintiff's declaration regarding Cherniss's purported "harassment" and "fondling" on inmate Cordero). This evidence is not admissible to show that Cherniss's conduct toward plaintiff was similarly inappropriate. *See* Fed. R. Evid. 404(a)(1), (b)(1) (character evidence is generally not admissible for the purpose of proving action in conformity).

1    by running his hand over the cleft of [plaintiff]'s buttocks in a sexually suggestive manner and

2    inserted a finger into the area of [plaintiff]'s anus."  ECF No. 63 at 15.

3         To prove that the search was sexually motivated, plaintiff again relies on various inmate

4    declarations.  *See* ECF No. 63 at 2-3 (contending that the May 17 search was "the culmination of

5    months of sexually-tainted comments and abusive behavior" from Cherniss).  In the declaration

6    of Rocky Bundeson, dated July 19, 2010, Bundeson refers to Cherniss's "continual harassment"

7    and "sexual misconduct" toward plaintiff "during physical hands-on body searches."[6]  ECF No.

8    63, Ex. 2 at 59.  Bundeson does not offer any facts to support his apparent opinion that

9    Cherniss's searches of plaintiff, on dates unknown, were sexual in nature.  *See Rivera v.*

10   *AMTRAK*, 331 F.3d 1074, 1078 (9th Cir. 2003) ("Conclusory allegations unsupported by factual

11   data cannot defeat summary judgment.").

12        In Bundeson's May 29, 2010, declaration, he states that on unspecified dates, he heard

13   Cherniss make "inappropriate comments" and "veiled threats" to plaintiff about his intent to

14   search plaintiff "because of the clothes he was wearing."  ECF No. 63, Ex. 2 at 58.  Bundeson

15   recalls that on one occasion, which he describes as a "punitive measure," Cherniss "singled"

16   plaintiff out and "told him laughingly that he would not be searched . . . because [he] was not

17   wearing a coat."  *Id.*  Despite Bundeson's description of Cherniss's conduct as "punitive" and

18   "threatening," no reasonable juror could conclude from his declaration that Cherniss directed

19   sexually suggestive or abusive comments to plaintiff.  *See Act Up!/Portland v. Bagley*, 988 F.2d

20   868, 871-72 (9th Cir. 1993)) (inmate's appearance, such as "bulky winter clothing" may cause

21   reasonable suspicion that arrestee is carrying or concealing contraband).

22        Plaintiff's evidence is no more compelling than the insufficient allegations of a sexual

23   assault made by the pretrial detainee plaintiff in *Smith v. L.A. County*, No. CV 07-7028-VAP

24   (MAN), 2010 U.S. Dist. LEXIS 61985 (C.D. Cal. Apr. 22, 2010).  There, the plaintiff alleged

25

26        [6] Defendants' objections to the additional statements in the July 19, 2010 Bundeson
     declaration are sustained.  *See* ECF No. 65-2.

1   that a deputy at the county jail conducted a "sexually abusive" contraband search when he

2   stripped plaintiff to his boxers, pulled plaintiff's boxers to look at his buttocks, reached

3   underneath the boxers to "pull" and "cup" plaintiff's genitals, and inserted his hand, "karate chop

4   style," between plaintiff's buttocks.  *Smith*, 2010 U.S. Dist. LEXIS 61985, *adopted by* 2010 U.S.

5   Dist. LEXIS 61883 (C.D. Cal., June 19, 2010).  The district court dismissed the plaintiff's Fourth

6   and Fourteenth Amendment claims because plaintiff had not alleged any facts showing that the

7   search was sexually abusive or constituted a sexual assault.  *See id.* at *13-16; *see also id.* at *9-

8   10 (stating that since pretrial detainees' rights under the Fourteenth Amendment are comparable

9   to prisoners' rights under the Eighth Amendment, the same standard applies).  In an unpublished

10  memorandum opinion, the U.S. Court of Appeals for the Ninth Circuit affirmed the dismissal.

11  *Smith v. L.A. County*, 452 Fed. Appx. 768 (9th Cir. 2011) (finding no allegations of deliberate

12  indifference or of an intent to punish for purposes of Fourteenth Amendment claim, and no

13  allegations showing that the search was unreasonable for purposes of a Fourth Amendment

14  claim).[7]

15          Here, the evidence shows that Cherniss conducted a brief over-the-clothes search of

16  plaintiff at a contraband checkpoint, outside the presence of other inmates.  *See* ECF No. 68 at

17  17.  Like the plaintiff in *Smith*, plaintiff labels the search as a "sexual assault."  However,

18  plaintiff fails to point to any specific facts or circumstances showing that the search was meant to

19  punish him or was otherwise unreasonable.  Merely characterizing the touching as offensive,

20  sexual, or embarrassing is not enough.  *See Berryhill v. Schriro*, 137 F.3d 1073 (8th Cir. 1998)

21  (affirming summary judgment for defendant on plaintiff's Eighth Amendment claim, where

22  plaintiff was subjected to an "embarrassing" and "unwanted" touch on his buttocks by a prison

23  /////

24  /////

25  ⎯⎯⎯⎯⎯⎯⎯⎯⎯⎯

26          [7] Citation to this unpublished decision is appropriate pursuant to Ninth Circuit Rule
    36-3(b).

1   employee in an encounter that lasted no longer than a minute); *Michenfelder v. Sumner*, 860 F.2d

2   328, 332 (9th Cir. 1988) (search may be unreasonable in violation of the Fourth Amendment if

3   "excessive, vindictive, harassing, or unrelated to any legitimate penological interest.").

4          Defendants' evidence, on the other hand, demonstrates that the May 17 search of plaintiff

5   was one of many clothed-searches of inmates that Cherniss conducted that day, in furtherance of

6   his duty to check for contraband.  There is no dispute that random, clothed-body searches of

7   inmates are mandated by law, and that they are integral to promoting the safety and security of

8   staff, inmates, the prison, and the public.  *See* Defs.' Stmt. of Undisp. Facts ("DUF") Nos. 10, 12

9   (citing Sheufelt Decl., Exs. A-B); ECF No. 62, Nos. 10, 12.  There is also no dispute that a

10  proper contraband search requires limited contact with the inmate's groin and buttocks.  Though

11  the parties dispute whether Cherniss used a "patting" or "sweeping" motion, as opposed to a

12  "grabbing" or "groping" motion, and also dispute the extent to which Cherniss touched

13  plaintiff's anal area, these disputes are not material.  *See Palmer v. O'Connor*, No. 2:11-cv-2927

14  KJN P, 2013 U.S. Dist. LEXIS 46306, at *11-12 (E.D. Cal. Mar. 28, 2013) ("Inmate sexual

15  harassment claims that allege brief inappropriate touching by a correctional official are generally

16  found to be noncognizable, particularly if the alleged touching occurred pursuant to an

17  authorized search.").  Plaintiff, who concedes that the unwanted contact lasted no longer than 15

18  seconds, produces no evidence showing that the search was sexually abusive, intended to inflict

19  pain, or otherwise unreasonable.

20         Plaintiff's claim rests solely on his subjective belief that the search was sexual in nature.

21  Drawing all inferences in plaintiff's favor, no reasonable juror could conclude from this alone,

22  that a sexual assault occurred or that the search was unreasonable.  *See Smith*, 2010 U.S. Dist.

23  LEXIS 61985, at *15, 20 (plaintiff's subjective belief that there was a "sexual aspect to the

24  search" not enough to demonstrate Eighth Amendment deliberate indifference or Fourth

25  Amendment unreasonableness).  Accordingly, the court finds there is no genuine dispute as to

26  whether the alleged searches violated plaintiff's Fourth or Eighth Amendment rights and

1    summary judgment must therefore be granted as to these claims in favor of defendants Cherniss

2    and Lesane.

3            **2.      First Amendment Claims**

4            Plaintiff claims that each of the defendants retaliated against him in violation of the First

5    Amendment.  "Within the prison context, a viable claim of First Amendment retaliation entails

6    five basic elements: (1) An assertion that a state actor took some adverse action against an

7    inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the

8    inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a

9    legitimate correctional goal."  *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005).[8]

10   Defendants first argue that plaintiff's retaliation claims fail because he has not asserted that any

11   defendant took an "adverse action" against him.  ECF No. 54-2 at 12.

12           As for Lesane, plaintiff has failed to demonstrate an adverse action.  First, plaintiff claims

13   that Lesane retaliated against him by making an "implied threat" that any grievance plaintiff

14   filed against Cherniss would fail.  Plaintiff fails to explain what he means by an "implied threat"

15   or what Cherniss did or said that plaintiff perceived as a threat.  As there is no evidence that

16   Cherniss actually threatened plaintiff, there is no genuine dispute as to whether Cherniss's

17   purported "threat," amounted to an adverse action.  Second, plaintiff claims that Lesane

18   retaliated against him by allowing Cherniss to resume his search of plaintiff after plaintiff

19   objected.  As discussed above, there is no genuine dispute as to whether Cherniss's search was

20   sexually abusive or lacked a legitimate purpose.  Plaintiff fails to show how allowing Cherniss to

21   resume his search of plaintiff caused him harm for purposes of his retaliation claim.  Third,

22   plaintiff contends that Lesane retaliated against him by "turning a blind eye" to Cherniss's

23   allegedly retaliatory disciplinary action.  However, plaintiff produces no evidence that Lesane

24   was even aware of Cherniss's report, let alone, that he failed to investigate or turned a "blind

25

26           [8] Alternatively to the fourth element, the prisoner may simply show that he suffered
     "harm that is more than minimal."  *Id.* at 567 n.11.

eye" to it.   Moreover, plaintiff's own evidence shows that he filed an administrative appeal regarding the allegedly false rules violation report, and that an investigation was conducted.  *See* ECF No. 63, Ex. 7.  Thus, plaintiff has not shown how Lesane's alleged failure to act in this regard was adverse to him.  Because there is no genuine dispute as to whether Lesane took adverse action against plaintiff, summary judgment on plaintiff's First Amendment retaliation claim against Lesane is proper.

As for Cherniss and Forncrook, however, defendants' "adverse action" argument is not supported by the record.  Plaintiff alleges that Cherniss issued a false rules violation report against him.[9]  Plaintiff also alleges that Forncrook denied him certain procedural safeguards during the related proceedings, resulting in a determination of guilt and a loss of thirty days of credits.[10]  In arguing that plaintiff has not asserted any adverse action, defendants ignore these allegations in plaintiff's verified complaint.  The court finds that plaintiff has alleged adverse actions for purposes of his First Amendment claims against defendants Cherniss and Forncrook and those verified allegations are adequate to defeat summary judgment.[11]

Next, defendants argue that the facts asserted by plaintiff do not, objectively, rise to the level of an "unconstitutional chilling" of his First Amendment rights.  ECF No. 54-2 at 12, 13.  For this element, a plaintiff need not demonstrate that his speech was "actually inhibited or suppressed," as such a requirement would unjustly allow a defendant to escape liability simply because the plaintiff was determined to persist in his protected activity.  *Id.* at 568-69.  Instead,

---

[9] Whether or not the report was false is a disputed issue of fact.  *See* DUF 23, 24; ECF No. 62 at Nos. 23, 24.

[10] It is undisputed that the credits were restored, but that the guilty finding still stands. DUF 37; ECF No. 62 at No. 37.  Though the credits were restored, the alleged denial of due process constitutes adverse action for purposes of plaintiff's retaliation claim.

[11] The allegations of a verified complaint may serve as an affidavit for purposes of summary judgment if they are based on personal knowledge and set forth the requisite facts with specificity.  *See Human Life of Washington Inc. v. Brumsickle*, 624 F.3d 990, 1022 (9th Cir. 2010).

the plaintiff must simply show that the defendant's conduct would chill or silence a person of ordinary firmness from future protected conduct. *Id.*; *Mendocino Envt'l Ctr. v. Mendocino County*, 192 F.3d 1283, 1300 (9th Cir. 1999) (stating that a plaintiff does not need to demonstrate that his exercise of First Amendment rights was chilled, but instead that defendants intended to interfere with plaintiff's exercise of rights). As noted, defendants do not address the false rules violation report or the denial of procedural safeguards with respect to plaintiff's retaliation claims. Defendants advance no argument as to why these allegedly retaliatory acts would not chill or silence a person of ordinary firmness from future protected conduct. Thus, summary judgment is not appropriate on this basis.

Defendants also contend that plaintiff cannot satisfy the causation element of his retaliation claims because (1) plaintiff "made no staff complaints or grievance against defendant Cherniss prior to the May 17, 2010 clothed body search," and (2) plaintiff had not met Forncrook prior to the rules violation hearing. ECF No. 54-2 at 13. These arguments lack merit. Plaintiff claims in his sworn opposition brief that during the May 17, 2010 search, he informed Lesane and Cherniss that he would be filing a complaint regarding Cherniss's search. *See* ECF No. 63 at 19-21; *see also* ECF No. 1 § II, ¶ 13. This raises a triable issue as to whether Cherniss was aware of plaintiff's intent to pursue conduct protected by the First Amendment before Cherniss issued the May 28, 2010 rules violation report. *See* ECF No. 63, Ex. 7 at 102. The fact that plaintiff did not actually file the complaint until May 31, 2010, *see id.*, Ex. 3 at 66, is not dispositive of the causation element. Likewise, whether or not plaintiff and Forncrook had met prior to the rules violation hearing is immaterial and does not demonstrate the absence of a disputed issue on causation. It is certainly conceivable that a prison official could become aware of a prisoner's protected conduct and retaliate in response without ever meeting the prisoner. Further, plaintiff submits evidence that by the time of the hearing, when the retaliation allegedly occurred, Forncrook was aware of plaintiff's protected conduct. *See* DUF 41; ECF No. 62 at No. 41; ECF No. 63 at 26; *see also* ECF No. 1 § II, ¶ 27 (alleging Forncrook warned plaintiff to

1   "be careful" with what he writes about Cherniss).  Accordingly, summary adjudication on this

2   ground is not appropriate.

3         Based on the foregoing, the court finds that summary judgment on plaintiff's retaliation

4   claims should be granted in favor of defendant Lesane, and denied as to defendants Cherniss and

5   Forncrook.

6         **3.**    <u>**Due Process**</u>

7         For the first time in their reply brief, defendants address plaintiff's allegations that

8   Forncrook denied him due process at the rules violation hearing.  *See* ECF No. 65 at 6.

9   Defendants argue that plaintiff's due process claims are barred because the guilty finding on the

10  rules violation report has not been overturned.  The Supreme Court has held, where a judgment

11  in the prisoner's favor in his section 1983 action would necessarily imply the invalidity of a

12  deprivation of good-time credits, the plaintiff must first demonstrate that the credits deprivation

13  has been invalidated in order to state a cognizable claim under section 1983.  *Edwards v.*

14  *Balisok*, 520 U.S. 641, 644 (1997); *Heck v. Humphrey*, 512 U.S. 477, 483, 486-87 (1994) (setting

15  forth this "favorable termination" rule).  However, the U.S. Court of Appeals for the Ninth

16  Circuit has clarified that application of *Heck*'s favorable termination rule "turns solely on

17  whether a successful § 1983 action would necessarily render invalid a conviction, sentence, or

18  administrative sanction that affected the length of the prisoner's confinement."  *Ramirez v.*

19  *Galaza*, 334 F.3d 850, 856 (9th Cir. 2003).  The *Heck* bar exists to preserve the rule that

20  challenges which, if successful, would necessarily imply the invalidity of incarceration or its

21  duration, be brought via petition for writ of habeas corpus.  *Muhammad v. Close*, 540 U.S. 749,

22  751-52 & n.1 (2004).

23        Defendants fail to demonstrate how the finding of guilt resulting from plaintiff's

24  disciplinary conviction will have any impact on the length of plaintiff's confinement.

25  /////

26  /////

1    Accordingly, defendants have not shown that Forncrook is entitled to summary judgment on

2    plaintiff's due process claim.  *See Ramirez*, 334 F.3d at 858 ("[W]here . . . a successful § 1983

3    action would not necessarily result in an earlier release from incarceration . . . the favorable

4    termination rule of *Heck* . . . does not apply.").

5                              **4.    Qualified Immunity**

6                Lastly, defendants argues they are entitled to qualified immunity.  Qualified immunity

7    protects government officials from liability for civil damages where a reasonable person would

8    not have known their conduct violated a clearly established right.  *Anderson v. Creighton*, 483

9    U.S. 635, 638-39 (1987).  In determining whether the doctrine of qualified immunity provides a

10   government officer protection, a court must make two inquires: 1) do the facts alleged show that

11   the officer violated a constitutional right; and 2) was the constitutional right well established.

12   *Saucier v. Katz*, 533 U.S. 194, 201 (2001); *Pearson v. Callahan*, 555 U.S. 223, (2009) (courts

13   have discretion to decide which of the two *Saucier* prongs to address first).  A plaintiff invokes a

14   "clearly established" right when "the contours of the right [are] sufficiently clear that a

15   reasonable official would understand that what he is doing violates that right."  *Anderson*, 483

16   U.S. at 640.  Qualified immunity is an affirmative defense and the burden of proving the defense

17   lies with the official asserting it.  *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir.1992).

18               Defendants' qualified immunity argument does not address the due process claim against

19   Forncrook.  Rather, it only addresses the retaliation claims and does so in a single sentence.  *See*

20   ECF No. 54-2 at 16 ("In addition, it would not have been clear to a reasonable officer that his

21   conduct would violate the Constitution in the situation HEILMAN presents concerning the

22   alleged retaliation.").  As discussed, the facts are in dispute as to whether the false rules violation

23   report or the denial of due process amounted to retaliation in violation of the First Amendment,

24   as well as the circumstances of that alleged violation.  These disputes preclude a finding of

25   /////

26   /////

1   qualified immunity.  *See LaLonde v. County of Riverside*, 204 F.3d 947, 953 (9th Cir. 2000) ("If

2   . . . there is a material dispute as to the facts regarding what the officer or the plaintiff actually

3   did, the case must proceed to trial").

4   **IV.      Conclusion**

5          Accordingly, IT IS HEREBY RECOMMENDED that:

6          1.  Defendant Forncrook's motion to dismiss on the ground that plaintiff failed to exhaust

7   available administrative remedies prior to filing suit (ECF No. 55) be denied; and

8          2.  Defendants' motion for summary judgment (ECF No. 54) be granted as to defendant

9   Lesane on all claims, denied as to the First Amendment retaliation claims against defendants

10  Cherniss and Forncrook, and denied as the Fourteenth Amendment due process claim against

11  defendant Forncrook.

12         These findings and recommendations are submitted to the United States District Judge

13  assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen days

14  after being served with these findings and recommendations, any party may file written

15  objections with the court and serve a copy on all parties.  Such a document should be captioned

16  "Objections to Magistrate Judge's Findings and Recommendations."  Failure to file objections

17  within the specified time may waive the right to appeal the District Court's order.  *Turner v.*

18  *Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

19  Dated:  July 30, 2013.

20

21                          EDMUND F. BRENNAN

22                          UNITED STATES MAGISTRATE JUDGE

23

24

25

26