1
ELIOT D. WILLIAMS (SBN 290780)
eliot.williams@bakerbotts.com
2
JASON R. GERMAN (SBN 280837)
jason.german@bakerbotts.com
3
SEAN K. APPLE (SBN 305692)
sean.apple@bakerbotts.com
4
**BAKER BOTTS L.L.P.**
1001 Page Mill Road, Suite 200
5
Palo Alto, California 94304
Telephone:      +1-650-739-7500
6
Facsimile:      +1-650-739-7699

7
*Attorneys for Thomas John Heilman*

8
XAVIER BECERRA, State Bar No. 118517
Attorney General of California
9
MICHELLE L. ANGUS, State Bar No. 210031
Supervising Deputy Attorney General
10
TYLER ONITSUKA, State Bar No. 267307
Deputy Attorney General
11
  1300 I Street, Suite 125
  P.O. Box 944255
12
  Sacramento, CA 94244-2550
  Telephone:  (916) 210-7557
13
  Fax:  (916) 324-5205
  E-mail:  Tyler.Onitsuka@doj.ca.gov
14

15
*Attorneys for Defendants L. Lesane, C.*
*Cherniss, and Nonparty California*
*Department of Corrections and Rehabilitation*
16

**UNITED STATES DISTRICT COURT**
17

**EASTERN DISTRICT OF CALIFORNIA**
18

**SACRAMENTO DIVISION**
19

20
THOMAS JOHN HEILMAN,

21
            Plaintiff,

22
      v.

23
C. CHERNISS, et al.,

24
            Defendants.

25

26

27

28

Case No. 2:11-cv-00042-JAM-EFB

**JOINT STATEMENT REGARDING PLAINTIFF HEILMAN'S MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND FURTHER RESPONSES**

**Date**: June 6, 2018
**Time:** 10:00 am
**Judge:** Honorable Magistrate Judge Edmund F. Brennan

# TABLE OF CONTENTS

**Page**

I.    BACKGROUND ...................................................................................... 5

     A.    **RFP Nos. 1, 3–5, 7, 11–16, and 19 to CDCR** ................................ 5

     B.    **RFP Nos. 4–5 to Defendant Cherniss** ........................................... 6

     C.    **Interrogatory Nos. 3–4 to Defendant Cherniss** ........................... 6

II.   CONTENTIONS ................................................................................... 6

     A.    **Introduction** ..................................................................................... 6

     B.    **CDCR Subpoena, RFP Nos. 1, 3–5, 7, 11–16, and 19** ................. 7

         **Request for Production No. 1 (CDCR)** ........................................ 7

             Response .................................................................................. 7

             Plaintiff's Arguments ............................................................. 7

             CDCR's Arguments .............................................................. 11

         **Request for Production No. 3 (CDCR)** ...................................... 14

             Response ................................................................................ 14

             Plaintiff's Arguments ........................................................... 14

             CDCR's Arguments .............................................................. 15

         **Request for Production No. 4 (CDCR)** ...................................... 16

             Response ................................................................................ 16

             Plaintiff's Arguments ........................................................... 16

             CDCR's Arguments .............................................................. 19

         **Request for Production No. 5 (CDCR)** ...................................... 22

             Response ................................................................................ 22

             Plaintiff's Arguments ........................................................... 22

             CDCR's Arguments .............................................................. 23

         **Request for Production No. 7 (CDCR)** ...................................... 23

             Supplemental Response ......................................................... 23

             Plaintiff's Arguments ........................................................... 23

             CDCR's Arguments .............................................................. 24

         **Request for Production No. 11 (CDCR)** .................................... 24

             Response ................................................................................ 24

             Plaintiff's Arguments ........................................................... 25

             CDCR's Arguments .............................................................. 25

         **Request for Production No. 12 (CDCR)** .................................... 27

Response ........................................................................................ 27

Plaintiff's Arguments .................................................................. 27

CDCR's Arguments ...................................................................... 28

**Request for Production No. 13 (CDCR)**.................................................. 30

Response ........................................................................................ 30

Plaintiff's Arguments .................................................................. 30

CDCR's Arguments ...................................................................... 30

**Request for Production No. 14 (CDCR)**.................................................. 31

Response ........................................................................................ 31

Plaintiff's Arguments .................................................................. 31

CDCR's Arguments ...................................................................... 31

**Request for Production No. 15 (CDCR)**.................................................. 31

Response ........................................................................................ 31

Plaintiff's Arguments .................................................................. 32

CDCR's Arguments ...................................................................... 32

**Request for Production No. 16 (CDCR)**.................................................. 32

Response ........................................................................................ 32

Plaintiff's Arguments .................................................................. 32

CDCR's Arguments ...................................................................... 33

**Request for Production No. 19 (CDCR)**.................................................. 33

Response ........................................................................................ 33

Plaintiff's Arguments .................................................................. 34

CDCR's Arguments ...................................................................... 35

C.      **RFP Nos. 4–5 to Cherniss** ................................................................ 36

**Request for Production No. 4 (Cherniss)** ............................................ 36

Response ........................................................................................ 36

Plaintiff's Arguments .................................................................. 37

Defendant Cherniss' Arguments ................................................ 37

**Request for Production No. 5 (Cherniss)** ............................................ 38

Response ........................................................................................ 38

Plaintiff's Arguments .................................................................. 39

Defendant Cherniss' Arguments ................................................ 39

D.      **Interrogatory Nos. 3–4 to Cherniss** ................................................ 39

**Interrogatory No. 3 (Cherniss)**............................................................ 39

Supplemental Response ............................................................... 39

Plaintiff's Arguments ................................................................ 40

Defendant Cherniss' Arguments ................................................. 41

**Interrogatory No. 4 (Cherniss)**............................................ 42

Supplemental Response ............................................................... 42

Plaintiff's Arguments ................................................................ 42

Defendant Cherniss' Arguments ................................................. 43

**III.     MEET-AND-CONFER EFFORTS** ............................................. 43

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Joint Statement**

## I.   BACKGROUND

Plaintiff Heilman, acting *pro se* and *in forma pauperis*, filed this civil-rights case on January 5, 2011. Plaintiff's complaint asserts that Defendants Cherniss and Lesane, a correctional officer and correctional sergeant, respectively, at California Medical Facility in Vacaville, violated Plaintiff's Fourth and Eighth Amendment rights with a series of sexually abusive searches. The Ninth Circuit Court of Appeals appointed counsel to represent Plaintiff on appeal on July 8, 2016, *Heilman v. Cherniss*, No. 15-15912 (9th Cir., June 16, 2015) (Dkt. No. 19), and counsel's representation continued after remand to this Court. On January 10, 2018, Plaintiff moved to reopen discovery, in part so that Plaintiff could serve discovery requests on Defendants and on the California Department of Corrections and Rehabilitation (CDCR). Dkt. No. 214. The Court granted Plaintiff's motion and reopened discovery on February 8, 2018. Dkt. No. 218. Fact discovery closed on May 8, 2018. *Id.*

Plaintiff subsequently served discovery on CDCR and Defendants. *Infra,* Parts A-C. The parties and non-parties conferred regarding those discovery requests and CDCR's and Defendants' responses thereto, but were unable to reach a resolution on their discovery disputes. *Infra,* Section III. Plaintiff therefore brings this motion to compel discovery from CDCR and Defendants.

### A.   RFP Nos. 1, 3–5, 7, 11–16, and 19 to CDCR

Plaintiff moves for an order compelling CDCR to produce documents responsive to RFP Nos. 1, 3–5, 7, 11–16, and 19, including Privilege Log Item Nos. 1–6 and 10–12. RFP Nos. 1 and 3 request documents related to one of the searches at issue in this case. RFP Nos. 4, 5, and 7 request documents related to other allegations that Defendants engaged in sexual misconduct or improper searching. RFP Nos. 11–16 request documents related to 3 other inmates who are potential witnesses in this case. RFP No. 19 requests documents related to CDCR's document retention policies.

Plaintiff gave notice to Defendants that Plaintiff would issue a subpoena to CDCR requesting documents for production on March 1, 2018. *See* Apple Decl., Ex. 8. The subpoena was served on CDCR on March 2. *Id.*, Ex. 9.

CDCR served objections to the subpoena on March 16, 2018. *Id.*, Ex. 10. CDCR served

1    updated objections and responses to the subpoena on April 25, 2018, along with its privilege log

2    and the declaration of B. Ebert in support of its privilege log. *Id.*, Exs. 11 (responses), 12 (privilege

3    log), and 13 (Ebert Declaration).

4        CDCR served a supplemental response to RFP No. 7 and a supplemental privilege log, both

5    dated May 16, 2018, and an updated Ebert Declaration dated May 14. *See id.*, Exs. 29 (supplemental

6    response to RFP No. 7), 30 (supplemental privilege log), and 31 (supplemental Ebert Declaration).

7        **B.    RFP Nos. 4–5 to Defendant Cherniss**

8        Plaintiff moves for an order compelling Defendant Cherniss to produce documents

9    responsive to RFP Nos. 4–5, which request documents related to accusations of sexual misconduct

10   and improper searching against Cherniss. Plaintiff only seeks to compel Cherniss to produce

11   responsive documents that are not in the possession, custody, or control of CDCR.

12       Plaintiff served requests for production on Cherniss on March 19, 2018. *See* Apple Decl.,

13   Ex. 14. Cherniss' responses and objections were served on April 18, 2018. *Id.*, Ex. 15. To the extent

14   Cherniss withheld documents based on privilege, those documents were logged on CDCR's April

15   25, 2018 privilege log. *See, e.g.*, *id.* at 2:17–19.

16       **C.    Interrogatory Nos. 3–4 to Defendant Cherniss**

17       Plaintiff moves for an order compelling Defendant Cherniss to provide sufficient responses

18   to Interrogatory Nos. 3 and 4, which ask Cherniss to describe the circumstances and number of other

19   allegations of sexual misconduct made by inmates against Cherniss.

20       Heilman, while acting *pro se*, served interrogatories on Cherniss. *See* Apple Decl., Ex. 16.

21   Cherniss first responded to those interrogatories on June 7, 2012. *Id.* Cherniss supplemented his

22   responses to Interrogatory Nos. 3–4 on May 4, 2018. *See id.*, Ex. 17.

23   **II.    CONTENTIONS**

24       **A.    Introduction**

25       Plaintiff moves to compel the California Department of Corrections and Rehabilitation

26   (CDCR) to produce documents in response to RFP Nos. 1, 3–5, 7, 11–16, and 19 of Plaintiff's

27   subpoena to CDCR. Plaintiff also moves to compel Defendant Cherniss to produce documents in

28   response to RFP Nos. 4–5 and to provide further responses to Interrogatory Nos. 3–4.

**B.   CDCR Subpoena, RFP Nos. 1, 3–5, 7, 11–16, and 19**

For each of these RFPs and all other requests in this Joint Statement, Plaintiff only seeks production of documents that have not already been produced by any party or non-party—Plaintiff does not seek duplicative production of any document that has already been produced.

**Request for Production No. 1 (CDCR):**

All Documents related to Thomas Heilman's Staff Complaint against Christopher Chernis[s], Log Number CMF 10-M-1299, including all Documents describing, generated by, or referenced in any investigation, decision, appeal, or hearing related to the Staff Complaint.

Response to Request for Production No. 1 (CDCR):

CDCR objects to this request because it is overbroad with respect to time, and seeks documents that are equally available to Plaintiff in his central file or in his personal possession. CDCR further objects because Defendants in this case have already produced a non-confidential copy of this administrative appeal to Plaintiff. The request also calls for the production of documents that are protected from disclosure under the official information privilege, California Code of Regulations, title 15, sections 3321 (official information privilege) and 3450, California Penal Code sections 832.7 and 832.8, and California Evidence Code sections 1043 through 1045. Subject to and without waiving any objections, CDCR responds as follows: Defendants have previously produced all non-privileged documents in CDCR's possession, custody, or control responsive to this request. See documents labeled as Bates numbers DEF POD 1 through 12. To the extent CDCR is withholding any documents responsive to this request on the basis of any privilege, such documents will be listed on a privilege log provided concurrently with these responses.

Plaintiff's Arguments Regarding Request for Production 1 (CDCR):

Plaintiff requests that the Court overrule CDCR's objections and order CDCR to produce documents responsive to this request, including Item No. 6 listed on CDCR's and Defendants' Privilege Log.[1] *See* Apple Decl., Ex. 12.

This request is not overbroad with respect to time. The request is inherently time-bound to the date of the Staff Complaint against Cherniss, which has a submission date of May 31, 2010. *See id.*, Ex. 18. Furthermore, these documents are central to the causes of action at issue in this case; the Staff Complaint referenced in RFP No. 1 was Heilman's attempt to seek administrative relief from the sexual abuse at issue in this case. The requested documents include records of a CDCR investigation into the disputed events, including notes from interviews with the relevant individuals conducted shortly after the disputed events. *See, e.g.*, *id.*, Ex. 19 ("Confidential inquiry," including

---

[1] Defendants incorporate CDCR's privilege log in their objections to Plaintiff's RFPs. *See, e.g.*, Apple Decl., Ex. 15 at 2:17–19.

1   "interviews of the appellant" and "department employees," used to decide Director's Level Appeal

2   of Heilman's staff complaint).

3     Most of CDCR's privilege claims are based on the laws of the State of California. Those

4   state-law claims are inapplicable to this case, as privileges in federal questions cases are determined

5   under federal law, not the law of the forum state. Fed. R. Evid. 501; *see Kerr*, 511 F.2d at 197; *Kaur*,

6   No. 1:05-cv-00276-OWW-DLB, 2007 WL 1521564, at *4.

7     CDCR's objections based on official information privilege under federal common law

8   should also be overruled. "The party asserting an evidentiary privilege has the burden to demonstrate

9   that the privilege applies to the information in question." *Tornay v. United States*, 840 F.2d 1424,

10   1426 (9th Cir. 1988). Official information privilege is "a qualified privilege, contingent upon the

11   competing interests of the requesting litigant and subject to disclosure especially where protective

12   measures are taken." *Kerr v. U.S. Dist. Court*, 511 F.2d 192, 198 (9th Cir. 1975); *Garcia v. Juarez*,

13   No. 1:12-cv-00750-AWI-EPG, 2016 WL 3648938, at *3 (E.D. Cal. July 7, 2016). The party

14   invoking the official information privilege must make a "substantial threshold showing" by way of

15   a declaration or affidavit from a responsible official with personal knowledge. *Grigsby v. Munguia*,

16   No. 2:14-cv-0789-GEB-AC-P, 2017 WL 633926, at *4 (E.D. Cal. Feb. 15, 2017). To satisfy this

17   burden, the declaration or affidavit must include:

18
19     (1) an affirmation that the agency generated or collected the material in issue and has
     maintained its confidentiality; (2) a statement that the official has personally
     reviewed the material in question; (3) a specific identification of the governmental
20     or privacy interests that would be threatened by disclosure of the material to plaintiff
     and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted
21     protective order would create a substantial risk of harm to significant governmental
     or privacy interests, and (5) a projection of how much harm would be done to the
22     threatened interests if disclosure were made.

23   *Id.*; *Bryant v. Romero*, No. 1:12-cv-02074-DAD-GSA-PC, 2017 WL 495634, at *3 (E.D. Cal. Feb.

24   6, 2017). If CDCR does not meet its threshold burden, the Court should order disclosure; otherwise,

25   the Court should order an *in camera* review and balance the parties' interests. *Kaur v. Alameida*,

26   No. 1:05-cv-00276-OWW-DLB, 2007 WL 1521564, at *4 (E.D. Cal. May 23, 2007).

27     The requested documents should be produced because CDCR has not shown any harm that

28   would occur if the documents are disclosed under the protective order that this Court has already

entered. *See Kelly v. City of San Jose*, 114 F.R.D. 653, 662 (N.D. Cal. 1987) (weight of government interests reduced where disclosure is only to litigant's attorney under protective order). CDCR's Ebert Declarations mostly ignore the existence of the protective order and instead focus on the hypothetical effects of disclosure to inmates or the public in general. *See, e.g.*, Apple Decl., Ex. 13 at ¶¶ 9 (expressing concern that "inmate witnesses might refuse to cooperate for fear that their words may be revealed <u>to an inmate plaintiff</u>"), 10 ("safety and security concern if highly sensitive information were leaked <u>to other inmates</u>"), 12–13 (asserting that "[b]y virtue of being familiar with these investigative techniques and areas of inquiry, <u>an inmate</u>, such as inmate Heilman or anyone he discloses this information to" could fabricate accusations), 14 ("the institution has a substantial interest in preventing documents containing personnel information from falling into the hands of <u>inmates, parolees, or their family members</u>"), and 15 ("<u>Inmates</u> who obtain confidential information are at risk from other inmates"); Ex. 31 at ¶¶ 7 ("release of a staff investigation and associated documents <u>to Plaintiff</u>"), 9 (similar to Ex. 13 at ¶¶ 12–13), 11 (asserting that CDCR has an interest in keeping personnel information "from falling into the hands of <u>inmates, parolees, or their family members</u>"), 12 (similar to Ex. 13 at ¶ 15).

CDCR's concerns about the harm that could occur from unrestricted disclosure is, "as in numerous civil rights cases involving CDCR[,] . . . addressed by the Stipulated Protected Order." *Kaur*, No. 1:05-cv-00276-OWW-DLB, 2007 WL 1521564, at *5; *see also Delaney v. Tilton*, No. 1:07-cv-1219-LJO-DLB-PC, 2008 WL 4298179, at *2 (E.D. Cal. Sept. 18, 2008) ("Nor has CDCR satisfied the Court that the effectiveness of the Internal Affairs process could not be maintained by the issuance of a protective order."); *Bryant v. Romero*, No. 1:12-cv-02074-DAD-GSA-PC, 2017 WL 495634, at *5 (E.D. Cal. Feb. 6, 2017) ("CDCR's claims of privilege do not justify withholding disclosure of these relevant documents if redacted and subject to a protective order."). In this case, the "confidential" designation in this Court's protective order obligates the parties to treat designated information as attorneys'-eyes-only. *See* Dkt. No. 222 § 7.2. Thus, CDCR need only designate the requested information "confidential" to cure its concerns of unrestricted disclosure. CDCR's concern about unrestricted disclosure is addressed by the Protective Order and is no basis for CDCR to refuse to produce the requested documents.

Ebert mentions in the final paragraph of his declarations that he believes that the protective order provides insufficient protections because (1) counsel for Plaintiff may deliberately or inadvertently disclose this information to Plaintiff; and (2) counsel representing Plaintiff do not have experience in correctional litigation and are "thus largely unaware of the potential security issues that may arise." Apple Decl., Exs. 13 at ¶ 18 and 31 at ¶ 13. CDCR provides no support for its speculation that Plaintiff's counsel will violate or is unable to abide by this Court's orders. *See MacNamara v. City of New York*, 249 F.R.D. 70, 83 (S.D.N.Y. 2008) (rejecting argument that protective order was insufficient to restrict disclosure where there was "absolutely no evidence in the record indicating that plaintiffs or their counsel were responsible for [prior] disclosures, or that they [were] likely to violate the Protective Orders in the future"). And Ebert's unsupported concern regarding deliberate or inadvertent disclosure applies in <u>every</u> case involving confidential information and a protective order, as a protective order necessarily only protects sensitive information if obeyed. *See Kelly*, 114 F.R.D. at 666 (protective orders generally sufficient to protect government interest "[a]bsent a special showing in a particular case"). Further, counsel's awareness of potential security issues, or alleged lack thereof, has no bearing on the protections provided by this Court's protective order. Rather, those protections apply when CDCR designates material as "confidential," irrespective of counsel's view of the potential security issues that may arise from disclosure. In sum, CDCR's speculative concerns regarding plaintiff counsel's ability to abide by this Court's orders are misplaced—counsel for Plaintiff has substantial experience with federal litigation, including complying with protective orders, and will abide by the protective order in this case.

The protective order sufficiently prevents the potential harms CDCR asserts may exist, and thus CDCR should produce responsive documents. In addition, the harms CDCR articulates are insufficient to make a threshold showing that the withheld documents are in fact privileged. For example, Ebert asserts—without evidence—that disclosing confidential investigations resulting from staff complaints would induce staff members to "delay or impede the investigatory process" by not being forthcoming during investigations. *See* Apple Decl., Ex. 13 at ¶ 8 and Ex. 31 at ¶ 6. Courts in this district have already considered and rejected this argument:

> Since no empirical study supports the contention that the possibility of disclosure would make officers who participate (as respondents or as investigators) in internal affairs investigations less honest it is doubly important to examine the assumptions that underlie that contention.
>
> . . .
>
> Fear of scrutiny by knowledgeable people motivated to be aggressive is likely to inspire police officers to conduct investigations and write reports that are less vulnerable to criticism, and the way to make them less vulnerable is to make them more thorough, more accurate and better reasoned.

*Garcia*, No. 1:12-cv-00750-AWI-EPG, 2016 WL 3648938, at *6–7 (quoting *Kelly v. City of San Jose*, 114 F.R.D. 653, 665–66 (N.D. Cal. 1987)). Likewise, courts have rejected Ebert's assertion that disclosure would discourage an inmate from providing information about abuse by a correctional officer. *See* Apple Decl., Ex. 13 at ¶ 9 and Ex. 31 at ¶ 7. The reasons for protecting the identities of confidential informants or inmates who provide damaging information about other inmates has no bearing on inmates who complain about correctional officers. *See Garcia*, No. 1:12-cv-00750-AWI-EPG, 2016 WL 3648938, at *7 (quoting *Kelly*, 114 F.R.D. at 665–66). Ebert's speculation that the withheld documents would allow inmates to crack CDCR's investigative code and "effectively provide a plan instructing inmates on how to best falsify misconduct accusations" fares no better. *See* Apple Decl., Ex. 13 at ¶¶ 12–13 and Ex. 31 at ¶¶ 8–9. Ebert does not state that the investigative techniques used by CDCR are any different from the straightforward procedure for investigating complaints generally: gather evidence, summarize it, report it to decision makers for evaluation. Such procedures are far from extraordinary and disclosing them does not present a security risk. *See Garcia*, No. 1:12-cv-00750-AWI-EPG, 2016 WL 3648938, at *8.

In sum, Plaintiff seeks documents relating to Plaintiff's prison-level complaint regarding the precise events at issue in this case. CDCR has responsive documents going to the core of the parties' dispute, yet still refuses to produce them based on speculative harms that have already been addressed by this Court's protective order. Plaintiff therefore respectfully requests the Court to order CDCR to produce documents responsive to this request.

<u>CDCR's Arguments Regarding Request for Production 1 (CDCR):</u>

The only responsive document withheld with respect to this request, and thus at issue here, is item number six on CDCR's privilege log, which is the confidential supplement to appeal log no.

1   CMF-10-M-01299, Plaintiff's administrative appeal regarding his allegations in this case. (Apple

2   Decl. Ex. 12.)

3        Discovery of confidential records is constrained by the "official information privilege."

4   *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1033 (9th Cir. 1990). To evaluate whether the privilege

5   applies, the Court must review a declaration submitted by an "official within the agency who has

6   personal knowledge regarding the materials" for:

7        (1) an affirmation that the agency has collected the material in question and held it
        in confidence; (2) an affirmation that the official has reviewed the material; (3) a
8        specific assertion of the governmental or privacy interests which would be threatened
        by disclosure of the material to plaintiff and/or plaintiff's attorney; (4) a specific
9        explanation of the substantial risk of harm to governmental or privacy interests which
        would result from a disclosure of the material to plaintiff and/or plaintiff's attorney;
10       and (5) an estimation of the amount of harm which would be done to the threatened
        governmental or privacy interests by disclosure of the material to plaintiff and/or
11       plaintiff's attorney.

12  *Price v. Cnty. of San Diego*, 165 F.R.D. 614, 621 (S.D. Cal. 1996). If the Court determines that "[the

13  party's] submissions meet the threshold requirements for proper invocation of this privilege, the

14  court will order the documents be" subject to *in camera* review. *Hampton v. City of San Diego*, 147

15  F.R.D. 227, 231 (S.D. Cal. 1993).

16       CDCR has served detailed privilege logs that describe the nature of the privileged documents

17  and declarations explaining the basis for the privilege. (Apple Decl. Exs. 12, 13, 30, 31.) No one

18  disputes that CDCR "has collected the material in question and held it in confidence" or that B.

19  Ebert, the author of the supporting declarations, "has reviewed the material." Rather, Plaintiff

20  disputes the existence of the governmental/privacy interest and the risk of harm to that interest from

21  disclosure. The Ebert declarations demonstrate both.

22       CDCR has a governmental interest in maintaining the confidentiality of its internal

23  investigations. All complaints categorized as staff complaints are investigated, and such

24  investigations are considered personnel documents protected from disclosure by the California

25  Public Safety Officers Bill of Rights. (Apple Decl. Ex. 13 ("Ebert Decl.") ¶¶ 4, 7.) The investigations

26  are protected, in part, because other inmates may be identified as witnesses, or confidential

27  informants, and their statements and names are recorded as part of the investigation. (Ebert Decl. ¶

28  9.) Disclosing any of the aforementioned information can give rise to serious safety and security

---

concerns. *Id.* For example, if an inmate is questioned and his statement does not "support" the complaining inmate's version of events, the inmate who made the statement may suffer retaliation from the complaining inmate either directly or through other inmates. *Id.*

Plaintiff contends that this concern does not arise when the subject of a complaint is a correctional officer, rather than another inmate, because there would be no retaliation against an inmate for providing damaging information about a correctional officer. But that presupposes that every other inmate interviewed in an investigation supports the complaining inmate's version of events. If, for example, Plaintiff submitted a staff complaint, and an inmate who was interviewed in the investigation into that staff complaint contradicted Plaintiff's version of events, the other inmate could face retaliation if Plaintiff ever learned of the interview. Or, worse yet, the other inmate might refuse to be interviewed in the first place because he fears that his interview might someday be provided to Plaintiff (or his attorneys) for use in litigation.

The risk of harm, as explained in the Ebert declarations, is not just that Plaintiff may obtain a copy of the confidential documents (although that is a significant concern)—it is that loss of control over the investigatory process as a whole damages CDCR's ability to conduct thorough and effective internal investigations. (Ebert Decl. ¶ 11.) Nor can a stipulated protective order adequately protect against this harm—disclosure of these items, even to attorneys, means that interviewees'' statements are not being kept confidential, which could compromise CDCR's ability to gather information. (Ebert Decl. ¶ 17.) The declarations establish that: (1) these documents are considered confidential by CDCR (Ebert Decl. ¶¶ 4, 7); (2) the disclosure of these documents could have damaging effects on the ability of CDCR to conduct investigations (Ebert Decl. ¶¶ 8-9); and (3) the disclosure of these documents could be used to harass or undermine staff (Ebert Decl. ¶¶ 14-15). Such a showing is more than adequate to invoke the official information privilege. *Frederick v. CDCR*, Case No. C 08-2222 MMC (PR), 2011 WL 1884201, at *4 (N.D. Cal. May 18, 2011) (privilege adequately supported where declaration showed that "files are considered confidential by CDCR," disclosure of information "could compromise . . . ability to work as effective correctional professionals," and "disclosure of [the] information could also be used to undermine officials' authority"). If needed, CDCR will also provide the requested documents to the Court for review *in*

*camera.*

**Request for Production No. 3 (CDCR):**

All Documents related to the search of Thomas Heilman by Christopher Cherniss conducted on May 17, 2010, at the California Medical Facility in Vacaville, CA.

<u>Response to Request for Production No. 3 (CDCR):</u>

CDCR objects to this request because it is overbroad with respect to time and subject matter, vague with respect to the term "related to," and seeks documents that are equally available to Plaintiff in his central file or in his personal possession. To the extent it seeks the rules violation report issued as a result of the search or the administrative appeal submitted by Plaintiff following the search, CDCR further objects because Defendants in this case have already produced these documents to Plaintiff. Subject to and without waiving any objections, CDCR responds as follows: Defendants have previously produced all documents in CDCR's possession, custody, or control responsive to this request. See documents labeled as Bates numbers DEF POD 1 through 21 and 45 through 58.

<u>Plaintiff's Arguments Regarding Request for Production No. 3 (CDCR):</u>

Plaintiff requests that the Court overrule CDCR's objections and order CDCR to produce documents responsive to this request, including the document identified in Privilege Log Item No. 6. *See* Apple Decl., Ex. 12.

While CDCR's response indicates that "Defendants have previously produced all documents in CDCR's possession, custody, or control responsive to this request," this is contradicted by CDCR's privilege log. CDCR is withholding a "confidential supplement to appeal log no. CMF-10-M-01299" as identified in Privilege Log Item No. 6. This log relates to CDCR's investigation of Heilman's staff complaint regarding an abusive search of Heilman by Defendant Cherniss. *See* Apple Decl., Ex. 18. Here, CDCR does not claim privilege as a basis for withholding this document, but even if it had done so, the Court should overrule this objection for the same reasons as RFP No. 1.

Additionally, CDCR has not produced the logbook for May 17, 2010 kept for the area in which the search occurred. Defendant Lesane testified that, at the time of the search, each area of the prison kept a logbook that correctional officers used to note unusual incidents. Apple Decl., Ex. 22 at 29:13–21. There was a logbook for the Unit 3 Grill Gate, where the May 17, 2010 search occurred. *Id.* at 31:22–25. Further, Lesane testified that "[d]isruptive inmates would be logged in the logbook." *Id.* at 30:20–31:2. As Defendant Cherniss' version of that incident is that Heilman "became disruptive," this incident should have been logged in the logbook. *See id.*, Ex. 20. And if

1    Heilman's alleged behavior was <u>not</u> logged in the logbook, that evidence would tend to discredit

2    Cherniss' narrative of the events. Either way, the logbook is related to the May 17, 2010 search and

3    should be produced.

4                   <u>CDCR's Arguments Regarding Request for Production No. 3 (CDCR):</u>

5            To the extent Plaintiff contests CDCR's invocation of the official information privilege,

6    CDCR's argument is the same as it was with respect to request for production number one.

7            This motion to compel is the first time that Plaintiff has made a request for any institutional

8    logbook. Plaintiff did not request that CDCR search for or produce any institutional logbook in the

9    multiple meet and confer communications between the parties, nor has there ever been a document

10   request that describes a request for an institutional logbook with reasonable particularity. (Apple

11   Decl. Exs. 1-7.) For those reasons alone, the motion should be denied with respect to this request.

12   *Rogers v. Giurbino*, 288 F.R.D. 469, 477 (S.D. Cal. 2012) ("A court can deny a motion to compel

13   solely because of a party's failure to meet and confer prior to filing the motion."); *Aquino v.*

14   *Ugwveze*, Case No. 1:08-cv-01639-AWI-SKO (PC), 2010 WL 2302475, at *1 (E.D. Cal. June 7,

15   2010) ("Plaintiff may not file a motion to compel production of a document that he has not yet

16   requested from Defendants directly."). Nor has CDCR even had an opportunity to investigate or

17   determine whether the requested logbook even still exists

18           Plaintiff's effort to now expand the scope of this request also highlights the vagueness and

19   overbreadth of the request. The request, which simply requests any document "related to" the search,

20   does not provide fair notice that it is seeking documents related to Plaintiff's later behavior or that

21   support or discredit the rules violation report. *Reinsdorf v. Skechers U.S.A., Inc.*, 296 F.R.D. 604,

22   616 (C.D. Cal. 2013) ("Requests should be reasonably specific, allowing the respondent to readily

23   identify what is wanted.") (quoting *Dauska v. Green Bay Packaging*, 291 F.R.D. 251, 261 (E.D.

24   Wis. 2013). CDCR should not have to guess at the specific documents required by a particular

25   request, and the Court should not compel production in response to this new document request.

26   *Mailhoit v. Home Depot U.S.A., Inc.*, 285 F.R.D. 566, 571 (C.D. Cal. 2012) (denying motion to

27   compel where "extremely broad description of the material sought by this category fails to put a

28   'reasonable person of ordinary intelligence' on notice of which specific documents or information

1    would be responsive to the request").

2                    **Request for Production No. 4 (CDCR):**

3        All Documents related to any accusation of, investigation of, or occurrence of sexual
         assault, sexual harassment, or sexual misconduct committed by Christopher
4        Cherniss.

5                    Response to Request for Production No. 4 (CDCR):

6        CDCR objects to this request because it is overbroad with respect to time and subject
         matter, and is vague with respect to the phrases "accusation of, investigation of, or
         occurrence of," and "sexual assault, sexual harassment, or sexual misconduct." The
7        request calls for the production of documents that are protected from disclosure under
         the official information privilege, California Code of Regulations, title 15, sections
8        3321 (official information privilege) and 3450, California Penal Code sections 832.7
         and 832.8, and California Evidence Code sections 1043 through 1045. The request
9        also violates the privacy rights of the listed staff and of any involved inmates.

10       The request is also unduly burdensome, oppressive, harassing, and violates the
         proportionality requirement of Rule 26(b)(1) of the Federal Rules of Civil Procedure
11       because, to the extent inmate appeals may be responsive to this request, inmate
         appeals are kept in the central file of the inmate who filed it. Therefore, to fully and
12       completely comply with this request, CDCR would need to search the central file of
         every inmate who has come into contact with Defendant Cherniss over the entire
13       course of his career. Identifying and tracking down all the case files for all such
         inmates, even if limited to the relevant time period, will create a separate, but equally
14       burdensome and expensive, hardship (assuming such records are even in CDCR's
         possession, custody, or control). It also calls for the production of irrelevant
15       materials. CDCR will not be producing documents responsive to this request, and
         documents identified as responsive to this request that are withheld on the basis of
16       privilege will be listed on a privilege log provided with these responses.

17            Plaintiff's Arguments Regarding Request for Production No. 4 (CDCR):

18       Plaintiff requests that the Court overrule CDCR's objections and order CDCR to produce

19   documents responsive to this request, including documents identified as Privilege Log Item Nos. 1–

20   6 and 10–12. *See* Apple Decl., Exs. 12 (privilege log) and 30 (supplemental privilege log). In

21   addition, Cherniss stated at his deposition that there have been approximately 15 or 16 staff

22   complaints made against him. Apple Decl., Ex. 21 at 117:19–25. According to Cherniss, 12 or 13

23   of those complaints accused Cherniss of improper searching, and most of them alleged sexual

24   misconduct. *Id.* at 120:11–19. Thus, Cherniss' testimony suggests that there are more staff

25   complaints than the 6 mentioned in CDCR's privilege logs, and Plaintiff moves to compel

26   production of all such documents.

27       Evidence of sexual misconduct committed by Cherniss is relevant to the claims of Cherniss'

28   sexual misconduct in this case. For example, prior acts of sexual misconduct by Cherniss are

relevant to establishing a pattern of conduct by Cherniss and determining the likelihood that Cherniss sexually abused Plaintiff. *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1268 (9th Cir. 2000) (holding that "it is generally accepted that a defendant with a propensity to commit acts similar to those charged is more likely to have committed the charged act than another and therefore such evidence is relevant and in conformity with the standards set out in Fed. R. Evid. 401 & 402."). Here, CDCR has evidence of not only accusations of sexual misconduct committed by Cherniss, but also sexual misconduct committed under nearly identical circumstances at issue in this case (i.e., in the course of an inmate search performed by Cherniss in his position as a prison guard).[2] Moreover, evidence of prior sexual misconduct committed by Cherniss is admissible as propensity evidence under at least Federal Rule of Evidence 415 and as evidence of lack of accident or mistake under at least Federal Rule of Evidence 404(b)(2), and thus this relevant evidence will assist the jury in resolving the claims at issue in this case.

Finally, Plaintiff's expert sociologist Dr. Stepjan Mestrovic is expected to testify regarding organizational shortcomings that foster and provide opportunity for abuse—particularly when the abuser has significant power and control over the abused, such as in the prison guard/inmate context. Evidence of CDCR's handling and investigation into the multiple factually-similar complaints of sexual abuse lodged against Cherniss is relevant to the application of Dr. Mestrovic's testimony to this case.

The Court should overrule CDCR's privilege objections for the same reasons as those in RFP No. 1: state law privileges do not apply in this federal action, and CDCR's Ebert declaration does not articulate any cognizable harm if the responsive documents are produced pursuant to this Court's protective order. Additionally, any asserted privilege has been waived by Cherniss' responses to Interrogatory Nos. 3 and 4. In those responses (reproduced below), Cherniss states that

---

[2] For example, the documents withheld by CDCR on the basis of privilege likely include relevant documents related to complaints against Cherniss for sexually abusive searches made by Travyon Harbor and Gregory Dyas. Travyon Harbor is an inmate who alleged that Cherniss grabbed and pulled on his penis and testicles during a search. *Harbor v. Cherniss*, No. 2:15-cv-00705-TLN-DB, 2017 WL 1354567, at *1 (E.D. Cal. Apr. 13, 2017); *see* Apple Decl., Exs. 24–26 (Harbor's Complaints). Harbor also alleged that Gregory Dyas, another inmate, filed a staff complaint against Cherniss for inappropriately fondling his genitalia during a search. *See id.*, Ex. 26 at ¶ 32.

in each of six investigations into sexual misconduct, investigating staff determined that Cherniss followed appropriate search procedures and that no violation of CDCR policy occurred. It is improper to assert privilege as a shield for withholding documents concerning these investigations while also wielding it as a sword by referencing investigation results that appear to benefit Defendants' case. *See Chevron Corp. v. Pennzoil Co.*, 974 F.2d 1156, 1162 (9th Cir. 1992) (implicit waiver where party raises a claim which in fairness requires disclosure of allegedly privileged information); *Washington Post Co. v. U.S. Dep't of Air Force*, 617 F. Supp. 602, 605 (D.D.C. 1985) (official information privilege as to executive memorandum waived by disclosing a summary of the findings).

CDCR's generalized concerns regarding the "privacy rights of the listed staff and of any involved inmates" is no basis for withholding the requested documents. There is a stipulated protective order in place, and CDCR is free to mark such documents as confidential and thus restrict the documents to attorney's eyes only. *See* Dkt. No. 222.

CDCR's objections regarding burden should be also overruled. As to those items logged in CDCR's privilege log, these items have already been identified by CDCR and thus present no burden to locate and produce. As to responsive items not logged in CDCR's privilege log, CDCR objects to searching for such documents because it asserts that it would have to search "the central file of every inmate who has come into contact with Defendant Cherniss over the entire course of his career." That search is not what Plaintiff requests. Instead, Plaintiff requests CDCR search for responsive documents in: (1) the personnel file of Defendants; (2) the files of its Employee Relations Office; (3) the files kept in or by its Appeals Office; and (4) the central files of inmates who have alleged sexual misconduct by Cherniss.

Those sources of information should not be burdensome for CDCR to comprehensively search, and CDCR has not explained how searching any of these sources would be burdensome. Defendant's counsel acknowledges that "staff complaints against defendants are searchable." *See* Apple Decl., Ex. 3 at 1. According to Deputy Warden Forncrook, each institution has an Employee Relations Office (ERO), which collects information regarding complaints made against CDCR staff. *See id.*, Ex. 23 at 34:6–24. Forncrook also testified that the ERO can search by officer to find all the

complaints made against that officer. *Id.* at 135:16–18. The complaints themselves are archived at an Appeals Office. *Id.* at 36:18–19. Further, Plaintiff agreed that CDCR may search the central files of the three individuals identified in RFP Nos. 11–16, rather than the central files of "every inmate who has come into contact with Defendant Cherniss over the entire course of his career." Plaintiff even offered to shoulder the burden of searching these central files by permitting CDCR to produce the entire central files so that Plaintiff could search them. *Id.*, Ex. 3 at 2–3. Thus, CDCR's burden objection should be overruled.

CDCR's Arguments Regarding Request for Production No. 4 (CDCR):

The responsive documents withheld with respect to this request, and thus at issue here, are items number one through six on CDCR's privilege log, and item number twelve on CDCR's supplemental privilege log. (Apple Decl. Exs. 12, 30.) Items number one through six are staff complaints submitted by inmates regarding Defendant Cherniss, and item number twelve is an equal employment opportunity complaint submitted by a female non-inmate co-worker regarding Defendant Cherniss.

Items number one through six are the sum total of staff complaints responsive to Plaintiff's request that CDCR has in its possession. Plaintiff's suggestion that CDCR has not listed responsive staff complaints on its privilege log is simply incorrect; CDCR conducted a diligent search and reasonable inquiry into this request, and has listed responsive complaints in its possession on the privilege log. (Ebert Decl. ¶ 3.) While Cherniss did state at his deposition that he believed that he had approximately fifteen or sixteen staff complaints, his answer was, by his own admission, a guess:

Q. Do you know whether you've ever received a 602 staff complaint directed against you?

A. Yes.

Q. And how many of those have you received?

A. Many.

Q. Ballpark figure?

A. Fifteen, 16, maybe. I don't know.

(Apple Decl. Ex. 21 at 117:19-25.) Counsel had also previously instructed Cherniss that it was

1  acceptable for him to guess when answering questions. *Id.* at 81:21-82:21 ("Q. Can you guess

2  roughly how many times you critiqued other guards' search techniques? A. I can't guess. Q. Once

3  a year, more than once a year, no idea? Mr. Onitsuka: Objection. Do you want a guess or estimate?

4  Q. Either works.")

5        To the extent Plaintiff contests CDCR's invocation of the official information privilege,

6  CDCR's argument is essentially the same as it was with respect to request for production number

7  one. However, all of the documents sought under this request also have significant privacy

8  implications because they were submitted by other inmates—and, in the case of item number twelve,

9  other non-party correctional staff.

10        Thus, there is a heightened privacy interest in these documents. *Garcia v. Strayhorn*, Case

11  No. 3:13-cv-0807 BEN (KSC), 2015 WL 5535733, at *3 (S.D. Cal. Sept. 17, 2015) (denying motion

12  to compel appeals submitted by other inmates because request "would also improperly implicate the

13  privacy rights of other inmates") *Frederick v. CDCR*, Case No. C 08-2222 MMC (PR), 2011 WL

14  1884201, at *3 (N.D. Cal. May 18, 2011) (denying motion to compel defendant's responses to non-

15  party inmate claims based on privacy of inmates). This is particularly so with item number twelve,

16  which is an equal employment opportunity complaint that does not involve conduct towards

17  inmates. *Sanchez v. City of Santa Ana*, 936 F.2d 1027, 1034 (9th Cir. 1990) ("the confidential nature

18  of employee personnel files suggests that opening the files to the plaintiffs for a general search could

19  reach well beyond the legitimate inquiries necessary to this litigation.").

20        The risk of harm from disclosure is elevated, as well. As explained in the Ebert declarations,

21  items number one through six include the personal information of correctional staff, as well as

22  specific references to confidential interviews with other, non-party inmates. (Ebert Decl. ¶¶ 5, 8.)

23  Similarly, item number twelve contains personal contact information for correctional employees,

24  including home and cell phone numbers. (Apple Decl. Ex. 31 ("Ebert Supp. Decl.") ¶ 10.) Because

25  item number twelve is an equal employment opportunity complaint, it is even more imperative that

26  it not be released in response to inmate litigation — a victim of workplace harassment or

27  discrimination in an institutional setting is far less likely to report such harassment or discrimination

28  if they know that their information could be used in prisoner litigation. (Ebert Supp. Decl. ¶ 11.)

1    Nor has Cherniss waived any privilege by acknowledging the fact and outcome of the staff

2    complaints against him. Contrary to Plaintiff's assertion, Cherniss is not using the privilege as a

3    "sword" in this litigation — no affirmative defense relies on the privileged information, and the

4    nature of the information disclosed is different than the information protected by the privilege. The

5    cases Plaintiff cites to support his waiver argument are also distinguishable. *Washington Post Co.*

6    *v. U.S. Dep't of Air Force*, 617 F.Supp. 602 (D.D.C. 1985), for example, dealt with a claim of

7    deliberative process privilege that was specific to the Freedom of Information Act. *Id.* at 605. And,

8    to the extent the Air Force waived any privilege in that case, the court found that it had only waived

9    the privilege with respect to the specific pieces of information that had been released to the public.

10   *Id.* ("Therefore, *with respect to those parts of the executive summary which disclose information*

11   *concerning findings and recommendations* contained in the FMI, the Air Force has waived any

12   privilege under Exemption 5 by releasing the executive summary.") (emphasis added). Thus, even

13   if the Court elects to adopt Plaintiff's waiver argument, the waiver would only extend as far as the

14   specific information that has been disclosed.

15   Finally, Plaintiff does not demonstrate the relevance of seeking item number twelve, which

16   concerns an allegation of sexual harassment from a female correctional staff member, and does not

17   involve any conduct towards or with an inmate. How Cherniss relates to female coworkers has little

18   or no bearing on how he relates to male inmates. Even were this an employment sexual harassment

19   claim against Cherniss, discovery would likely only encompass evidence of his treatment towards

20   individuals who are similarly situated to Plaintiff. *Heyne v. Caruso*, 69 F.3d 1475, 1479 (9th Cir.

21   1995) ("an employer's conduct tending to demonstrate hostility *towards a certain group* is both

22   relevant and admissible where the employer's general hostility *towards that group* is the true reason

23   behind firing an employee *who is a member of that group*.") (emphasis added). Without any such

24   showing, Plaintiff is not entitled to these documents because he cannot overcome the privacy rights

25   that Cherniss (and the EEO complainant) have in this document. *Sanchez v. City of Santa Ana*, 936

26   F.2d 1027, 1034 (9th Cir. 1990); *Guthrey v. CDCR*, Case No. 1:10-cv-02177-AWI-BAM, 2012 WL

27   2499938, at *15 (E.D. Cal. June 27, 2012) (requiring showing of need that outweighs privacy

28   interest to compel disclosure).

If needed, CDCR will also provide the requested documents to the Court for review *in camera*. If CDCR is required to produce these documents, CDCR also requests permission to redact any personal information.

**Request for Production No. 5 (CDCR):**

All Documents related to any accusation, investigation of, or occurrence of improper searching of a CDCR inmate committed by Christopher Cherniss.

Response to Request for Production No. 5 (CDCR):

CDCR objects to this request because it is overbroad with respect to time and subject matter, and is vague with respect to the phrases "accusation of, investigation of, or occurrence of," and "improper searching." The request calls for the production of documents that are protected from disclosure under the official information privilege, California Code of Regulations, title 15, sections 3321 (official information privilege) and 3450, California Penal Code sections 832.7 and 832.8, and California Evidence Code sections 1043 through 1045. The request also violates the privacy rights of the listed staff and of any involved inmates.

The request is also unduly burdensome, oppressive, harassing, and violates the proportionality requirement of Rule 26(b)(1) of the Federal Rules of Civil Procedure because, to the extent inmate appeals may be responsive to this request, inmate appeals are kept in the central file of the inmate who filed it. Therefore, to fully and completely comply with this request, CDCR would need to search the central file of every inmate who has come into contact with Defendant Cherniss over the entire course of his career. Identifying and tracking down all the case files for all such inmates, even if limited to the relevant time period, will create a separate, but equally burdensome and expensive, hardship (assuming such records are even in CDCR's possession, custody, or control). It also calls for the production of irrelevant materials. CDCR will not be producing documents responsive to this request, and documents identified as responsive to this request that are withheld on the basis of privilege will be listed on a privilege log provided with these responses.

Plaintiff's Arguments Regarding Request for Production No. 5 (CDCR):

Plaintiff requests that the Court overrule CDCR's objections and order CDCR to produce documents responsive to this request, including the documents identified in Privilege Log Item Nos. 1–6 and 10–12. *See* Apple Decl., Exs. 12 (privilege log) and 30 (supplemental privilege log).

The reasons for compelling production to this request are the similar to those identified for RFP No. 4. However, RFP No. 5 is broader than RFP No. 4, which is specifically related to sexual misconduct committed by Cherniss. RFP No. 5 seeks documents related to accusations, investigations, or occurrences of improper searching performed by Cherniss. Cherniss admitted at his deposition that an estimated 12–13 staff complaints accused Cherniss of improper searching, Apple Decl., Ex. 21 at 120:11–19, yet CDCR logs only 6 investigations into staff complaints (presumably investigating Cherniss). Plaintiff is entitled to all documents relating to accusations,

1  investigations, or occurrences of improper searching performed by Cherniss, regardless of whether

2  such complaints are determined by CDCR or Defendants to constitute sexual misconduct. Plaintiff

3  should not have to accept CDCR's and Defendants' characterization about whether complaints of

4  improper searching constitute complaints of sexual misconduct. Furthermore, improper searching

5  is central to the claims in this case. Thus, CDCR should produce all documents in its possession,

6  custody, or control that are responsive to this request.

7  <u>CDCR's Arguments Regarding Request for Production No. 5 (CDCR):</u>

8  The responsive documents withheld with respect to this request, and thus at issue here, are

9  items number one through six on CDCR's privilege log. (Apple Decl. Ex. 12.) Contrary to Plaintiff's

10  assertion, CDCR has not artificially limited or narrowed the categories of responsive documents

11  related to requests for production numbers four and five, and the arguments in response to this

12  request are the same as the arguments in response to request for production number four.

13  **Request for Production No. 7 (CDCR):**

14  All Documents related to any accusation, investigation of, or occurrence of sexual
assault, sexual harassment, or sexual misconduct committed by Larry Lesane.

15  <u>Supplemental Response to Request for Production No. 7 (CDCR):</u>

16  CDCR objects to this request because it is overbroad with respect to time and subject
matter, and is vague with respect to the phrases "accusation of, investigation of, or

17  occurrence of," and "sexual assault, sexual harassment, or sexual misconduct." The
request calls for the production of documents that are protected from disclosure under

18  the official information privilege, California Code of Regulations, title 15, sections
3321 (official information privilege) and 3450, California Penal Code sections 832.7

19  and 832.8, and California Evidence Code sections 1043 through 1045. The request
also violates the privacy rights of the listed staff and of any involved inmates.

20  The request is also unduly burdensome, oppressive, harassing, and violates the
proportionality requirement of Rule 26(b)(1) of the Federal Rules of Civil Procedure

21  because, to the extent inmate appeals may be responsive to this request, inmate
appeals are kept in the central file of the inmate who filed it. Therefore, to fully and

22  completely comply with this request, CDCR would need to search the central file of
every inmate who has come into contact with Defendant Lesane over the entire

23  course of his career. Identifying and tracking down all the case files for all such
inmates, even if limited to the relevant time period, will create a separate, but equally

24  burdensome and expensive, hardship (assuming such records are even in CDCR's
possession, custody, or control). It also calls for the production of irrelevant

25  materials. CDCR will not be producing documents responsive to this request, and
documents identified as responsive to this request that are withheld on the basis of

26  privilege will be listed on a privilege log provided with these responses.

27  <u>Plaintiff's Arguments Regarding Request for Production No. 7 (CDCR):</u>

28  Plaintiff requests that the Court overrule CDCR's objections and order CDCR to produce

documents responsive to this request, including documents identified as Privilege Log Item Nos. 10–12. *See* Apple Decl., Ex. 30 (supplemental privilege log).

The reasons for compelling production to this request are the similar to those identified for RFP No. 4. Lesane is alleged to have witnesses Cherniss sexually abusing Heilman and to have refused to take action to stop the abuse despite Heilman's protests. Lesane's attitudes about and history of sexual assault, sexual harassment, or sexual misconduct are therefore relevant to this case, as is Lesane's conduct in the investigations into sexual assault, sexual harassment, or sexual misconduct.

### CDCR's Arguments Regarding Request for Production No. 7 (CDCR):

The responsive documents withheld with respect to this request, and thus at issue here, are items number ten and eleven on CDCR's supplemental privilege log. (Apple Decl. Ex. 30.) Item number ten is a memorandum regarding a verbal complaint made by an inmate involving Defendant Lesane, and item number eleven is an equal employment opportunity complaint by a female co-worker regarding Lesane. The arguments in response to this request are the same as the arguments in response to request for production number four. If needed, CDCR will also provide the requested documents to the Court for review *in camera*. If CDCR is required to produce these documents, CDCR also requests permission to redact any personal information.

### Request for Production No. 11 (CDCR):

Documents sufficient to identify the current or last known address and contact information of Victor Cordero (CDC Inmate Number J96058).

### Response to Request for Production No. 11 (CDCR):

CDCR objects to this request because the request is overbroad with respect to time and subject matter, is unduly burdensome, oppressive, and harassing because it is not relevant to the claims asserted, calls for the production of documents protected from disclosure under California Code of Regulations, title 15, sections 3321 (official information privilege), 3370, and 3450, and disclosure of responsive documents could compromise the safety and security of the prison, prison staff, and inmates. The request also seeks private third party information, and the request does not indicate that the third party inmate has consented or has received notice regarding the request for his information. Subject to and without waiving any objections, CDCR will produce documents sufficient to identify the last known address of Victor Cordero (J96058). Such documents will only be produced subject to an appropriate protective order, and will be redacted to protect other biographical information not requested in the request.

<u>Plaintiff's Arguments Regarding Request for Production No. 11 (CDCR):</u>

Plaintiff requests that the Court overrule CDCR's objections and order CDCR to produce documents responsive to this request. Plaintiff's request seeks information regarding the contact information of an inmate who, like Plaintiff, asserts that Cherniss performed a sexually abusive search.

CDCR produced documents purporting to show only the last known address of this individual. *See* Apple Decl., Ex. 28. However, despite the RFP's explicit request for Cordero's "contact information," CDCR redacted all of Cordero's "Primary Emergency Contact" information. *See, e.g.*, *id.* at SDT 101, 104, and 109. Cordero's primary emergency contact information is responsive to this request, and it is improper for CDCR to withhold it. CDCR's argument that Cordero's emergency contact information "is not in any way responsive to the request or relevant to the case," *see id.*, Ex. 7, is belied by the fact that CDCR itself identifies Cordero's emergency contact information as a particular type of "contact information" for Cordero and stores it in Cordero's own personnel profile. Moreover, CDCR's concern that Cordero's emergency contact information might raise privacy issues because it "identif[ies] individuals who are not even the subject[] of the document request[]" is cured simply by designating such information as "confidential" according to the Court's protective order entered in this case.

In addition, Plaintiff asked CDCR to "either confirm that the CDCR does not have any telephone numbers for these individuals or provide the telephone numbers for these individuals." *Id.*, Ex. 7 at 2. While CDCR indicated that "no phone number information for these individuals <u>has been redacted</u>," CDCR did not state that it is not in the possession, custody, or control of such information. *See id.* at 1 (emphasis added). Thus, to the extent that CDCR has phone numbers (or other contact information) for these individuals, Plaintiff requests that the Court order CDCR to produce this information.

<u>CDCR's Arguments Regarding Request for Production No. 11 (CDCR):</u>

CDCR has produced documents "sufficient to identify the current or last known address and contact information of Victor Cordero," which is precisely what is requested. (Apple Decl. Ex. 28.) Where the produced documents provide private third party information, such as social security

numbers, driver's license numbers, or birth dates, the documents have been redacted to protect that information. *Guthrey v. CDCR*, Case No. 1:10-cv-2177-AWI-BAM, 2012 WL 2499938, at *15 n. 6 (E.D. Cal. June 27, 2012) ("Even where a protective order is in place-as is the case here-protecting the identities of third parties is often warranted. In cases involving employee complaints or information implicating a third party's privacy rights, redaction is necessary.")

Plaintiff now attempts to expand "contact information of Victor Cordero" to include "contact information of Victor Cordero's relatives/associates" by arguing that information regarding anyone listed as an emergency contact should also be disclosed. First, however, that is not what the text of the document request asks for. An "emergency contact" is not a person you contact to obtain information about an individual; it is a person you contact when an individual is unable to communicate or needs assistance from a friend or next of kin. *See, e.g.,* Cal. Code Regs., tit. 15, § 3357(e) (requiring annual update of emergency contact information in case of death, serious injury, or serious illness). The mere fact that CDCR lists this information in a document about Cordero does not make it his "contact information."

Second, Plaintiff's expansion of the request to include information about Cordero's relatives/associates raises an entirely new layer of privacy concerns. *Guthrey*, 2012 WL 2499938, at 15 ("Federal Courts ordinarily recognize constitutionally based right of privacy that can be raised in response to discovery requests."). While Plaintiff contends that Cordero complained about conduct by Cherniss, Plaintiff is now requesting information not about Cordero himself, but about an individual who is merely listed as a relative or associate of Cordero's (and who may not even know that Cordero provided his or her information to CDCR). Such private information should not be disclosed. *A.A. v. Cnty. of Riverside*, Case No. ED CV 14-2556-VAP (SPx), 2015 WL 13648571, at *5 (C.D. Cal. Sept. 11, 2015) (declining to compel production of contact information for putative class members based on privacy concerns).

Third, CDCR is not concealing any phone number information for these individuals. The documents produced include the last known address and contact information for Cordero, and no other such documents with more information exist. CDCR is not attempting to hide the ball or mince words to avoid providing information; if Plaintiff wanted a formal response that CDCR does not

possess a phone number for Cordero, then he should have served an interrogatory or a document request that requested phone number information with reasonable particularity.

If the Court would like to evaluate the propriety of CDCR's redactions to these documents, CDCR will provide them to the Court for *in camera* review. *Luna v. Cate*, Case No. 1:13-cv-00822-SAB (PC), 2016 WL 29635, at *5 (E.D. Cal. Jan. 4, 2016).

**Request for Production No. 12 (CDCR):**

All Documents relating to any Rules Report Violation made by Christopher Cherniss against Victor Cordero.

Response to Request for Production No. 12 (CDCR):

CDCR objects to this request because the request is overbroad with respect to time and subject matter, is unduly burdensome, oppressive, and harassing because it is not relevant to the claims asserted, calls for the production of documents protected from disclosure under California Code of Regulations, title 15, sections 3321 (official information privilege), 3370, and 3450, and disclosure of responsive documents could compromise the safety and security of the prison, prison staff, and inmates. The request also seeks private third party information, and the request does not indicate that the third party inmate has consented or has received notice regarding the request for his information.

The request is also unduly burdensome, oppressive, harassing, and violates the -proportionality requirement of Rule 26(b)(1) of the Federal Rules of Civil Procedure because rules violation reports are not sortable by the identity of the issuing officer. Therefore, to fully and completely comply with this request, CDCR would need to manually review each and every rules violation report issued to the subject inmate over the course of his entire incarceration (assuming such records are even in CDCR's possession, custody, or control). CDCR will not produce any documents in response to this request.

Plaintiff's Arguments Regarding Request for Production No. 12 (CDCR):

Plaintiff requests that the Court overrule CDCR's objections and order CDCR to produce documents responsive to this request. This request seeks documents regarding rules report violations Cherniss made against inmate Cordero, who accused Cherniss of performing a sexually abusive search.

Cherniss attempts to discredit Plaintiff's description of the search giving rise to this case by asserting the <u>Plaintiff</u> committed sexual misconduct towards <u>Cherniss</u> during that search, as evidenced by the rules report violation Plaintiff received. Plaintiff is entitled to investigate whether Cherniss has a pattern of issuing rules report violations to inmates who accuse him of performing a sexually abusive search. Plaintiff attempted to discover the requested information from Cherniss during his deposition, but Cherniss was unable to recall anything about Cordero, Patillo, or

1   Bundesen. *See* Apple Decl., Ex. 21 at 123:2–7, 162:10–14, 163:16–164:2. Thus, CDCR appears to

2   be the only source of this information.

3      CDCR's privilege objections should be overruled for the same reasons set forth in RFP No.

4   1. CDCR's speculation about potential harm of disclosure to inmates has been mooted by this

5   Court's protective order.

6      CDCR's objection that the "request does not indicate that the third party inmate has

7   consented or has received notice regarding the request for his information" is not a basis for

8   withholding documents and should be overruled. To the extent that such an obligation exists, CDCR,

9   not Plaintiff, should notify third parties that information will be disclosed subject to the Court's

10   protective order.

11      CDCR's burden objection should be overruled. CDCR has failed to provide any support for

12   its assertion that locating rules violations reports for this inmate would constitute undue burden. For

13   example, CDCR does not explain how many rules violation reports this inmate has received, how

14   many pages the inmate's central file is, and how long it would take to conduct such a review. Further,

15   counsel for Plaintiff offered to undertake the allegedly burdensome search by agreeing that CDCR

16   could produce the entire central file for this inmate and Plaintiff would search for responsive

17   documents. Apple Decl., Ex. 3 at 3. Despite Plaintiff's offer, CDCR has still refused to produce

18   these documents.

19      <u>CDCR's Arguments Regarding Request for Production No. 12 (CDCR):</u>

20      First, CDCR initially objected to this request because it is overbroad with respect to time

21   and subject matter. Even accepting Plaintiff's theory of relevance for these documents, the request

22   is not temporally tied to any allegations Cordero may have made against Cherniss, nor is it is it tied

23   to the subject matter of Plaintiff's theory (*i.e.,* an improper search). Absent such clarification, the

24   Court should not compel production based merely on Plaintiff's speculation that Cordero *may* have

25   received a rules violation report that *may* have been tied to an allegation regarding misconduct.

26   *Calderon v. U.S. Dist. Ct. for the N. Dist. of Cal.*, 98 F.3d 1102, 1106 (9th Cir. 1996) ("[C]ourts

27   should not allow prisoners to use federal discovery for fishing expeditions to investigate mere

28   speculation.")

Second, the request implicates significant privacy concerns. As noted above, "[f]ederal courts ordinarily recognize a constitutionally based right of privacy that can be raised in response to discovery requests." *Guthrey v. CDCR*, Case No. 1:10-cv-02177-AWI-BAM, 2012 WL 2499938, at *15 (E.D. Cal. June 27, 2012) (citing *Breed v. U.S. Dist. Ct. for N. Dist.*, 542 F.2d 1114, 1116 (9th Cir. 1976). "To evaluate privacy objections under either federal or state law, the Court must balance the party's need for the information against the individual's privacy right in [the information]." *Id.* (quoting *Tierno v. Rite Aid Corp.*, Case No. 05-cv-02520-TEH, 2008 WL 3287035, at *3 (N.D. Cal. July 31, 2008).

Courts have historically viewed nonparty inmate records as protected by this right. *Garcia v. Strayhorn*, Case No. 3:13-cv-0807-BEN (KSC), 2015 WL 5535733, at *3 (S.D. Cal. Sept. 17, 2015) (denying motion to compel staff complaints filed by other inmates because "the requested documents would also improperly implicate the privacy rights of other inmates"); *Clinton v. CDCR*, Case No. CIV S-05-1600-LKK-CMK, 2010 WL 5476751, at *1 (E.D. Cal. Dec. 30, 2010) ("Plaintiff's requests for other inmates' files is denied. The granting of such a request would violate the other inmates' privacy"); *James v. Scribner*, Case No. CV F-04-5878-REC-DLB, 2006 WL 1581911, at *2 (E.D. Cal. June 2, 2006) (denying motion to compel because "to the extent Plaintiff requests documents relating to 'other inmates' medical and disciplinary records,' the request is violative of the privacy rights of the 'other inmates'). Even requests for documents regarding parties to litigation can be denied if those documents may implicate nonparty privacy rights. *Frederick v. CDCR*, Case No. C 08-2222 MMC (PR), 2011 WL 1884201, at *3 (N.D. Cal. May 18, 2011) (denying motion to compel documents showing defendant's prior responses to inmate complaints because the documents could "raise[ ] serious concerns about the non-party inmate's private information").

Plaintiff has demonstrated only speculative relevance with respect to this request by asserting, without any support, that Cherniss has a pattern of issuing rules violation reports to inmates who accuse him of misconduct. Rules violation reports include substantial private information about the subject inmate, including, for example, what level of mental health care the inmate receives, information about the inmate's literacy level, and whether the inmate requires any

1   medical accommodations. (Apple Decl. Ex. 20.) All of this private information weighs against

2   disclosure.

3        Finally, the limited relevance of this information makes the request disproportionate to the

4   needs of this case under Rule 26(b)(1) of the Federal Rules of Civil Procedure. This case is not about

5   whether any other inmate received a rules violation report from Cherniss, nor is it about whether

6   any such rules violation report was issued in retaliation for an accusation of misconduct. It is not

7   even about whether Plaintiff received a rules violation report in retaliation for an accusation of

8   misconduct; a jury has already decided that claim in Cherniss's favor. (ECF No. 181.) That lack of

9   relevance, when weighed against the burden associated with retrieving these documents, requires

10  that the motion be denied.

11                    **Request for Production No. 13 (CDCR):**
         Documents sufficient to identify the current or last known address and contact
12       information of Daniel Patillo (CDC Inmate Number E13695).

13              Response to Request for Production No. 13 (CDCR):
         CDCR objects to this request because the request is overbroad with respect to time
14       and subject matter, is unduly burdensome, oppressive, and harassing because it is not
         relevant to the claims asserted, calls for the production of documents protected from
15       disclosure under California Code of Regulations, title 15, sections 3321 (official
         information privilege), 3370, and 3450, and disclosure of responsive documents
16       could compromise the safety and security of the prison, prison staff, and inmates.
         The request also seeks private third party information, and the request does not
17       indicate that the third party inmate has consented or has received notice regarding
         the request for his information. Subject to and without waiving any objections,
18       CDCR will produce documents sufficient to identify the last known address of Daniel
         Patillo (E13695). Such documents will only be produced subject to an appropriate
19       protective order, and will be redacted to protect other biographical information not
         requested in the request.
20

21              Plaintiff's Arguments Regarding Request for Production No. 13 (CDCR):

22       Plaintiff requests that the Court overrule CDCR's objections and order CDCR to produce

23  documents responsive to this request.

24       The reasons for compelling production to this request are the same as those identified for

25  RFP No. 11.

26              CDCR's Arguments Regarding Request for Production No. 13 (CDCR):

27       The same arguments made by CDCR in response to request for production no. 11 apply to

28  this request.

**Request for Production No. 14 (CDCR):**

All Documents relating to any Rules Report Violation made by Christopher Cherniss against Daniel Patillo.

Response to Request for Production No. 14 (CDCR):

CDCR objects to this request because the request is overbroad with respect to time and subject matter, is unduly burdensome, oppressive, and harassing because it is not relevant to the claims asserted, calls for the production of documents protected from disclosure under California Code of Regulations, title 15, sections 3321 (official information privilege), 3370, and 3450, and disclosure of responsive documents could compromise the safety and security of the prison, prison staff, and inmates. The request also seeks private third party information, and the request does not indicate that the third party inmate has consented or has received notice regarding the request for his information.

The request is also unduly burdensome, oppressive, harassing, and violates the proportionality requirement of Rule 26(b)(1) of the Federal Rules of Civil Procedure because rules violation reports are not sortable by the identity of the issuing officer. Therefore, to fully and completely comply with this request, CDCR would need to manually review each and every rules violation report issued to the subject inmate over the course of his entire incarceration (assuming such records are even in CDCR's possession, custody, or control). CDCR will not produce any documents in response to this request.

Plaintiff's Arguments Regarding Request for Production No. 14 (CDCR):

Plaintiff requests that the Court overrule CDCR's objections and order CDCR to produce documents responsive to this request.

The reasons for compelling production to this request are the same as those identified for RFP No. 12.

CDCR's Arguments Regarding Request for Production No. 14 (CDCR):

The same arguments made by CDCR in response to request for production no. 12 apply to this request.

**Request for Production No. 15 (CDCR):**

Documents sufficient to identify the current or last known address and contact information of Rocky Bundesen (CDC Inmate Number AB4300).

Response to Request for Production No. 15 (CDCR):

CDCR objects to this request because the request is overbroad with respect to time and subject matter, is unduly burdensome, oppressive, and harassing because it is not relevant to the claims asserted, calls for the production of documents protected from disclosure under California Code of Regulations, title 15, sections 3321 (official information privilege), 3370, and 3450, and disclosure of responsive documents could compromise the safety and security of the prison, prison staff, and inmates. The request also seeks private third party information, and the request does not indicate that the third party inmate has consented or has received notice regarding the request for his information. Subject to and without waiving any objections, CDCR will produce documents sufficient to identify the last known address of Rocky

Joint Statement Re: Plaintiff's Motion to
Compel Production of Documents and                    - 31 -                    Case No. 2:11-cv-00042-JAM-EFB
Further Responses

1   Bundesen (AB4300). Such documents will only be produced subject to an
    appropriate protective order, and will be redacted to protect other biographical
2   information not requested in the request.

3       <u>Plaintiff's Arguments Regarding Request for Production No. 15 (CDCR):</u>

4       Plaintiff requests that the Court overrule CDCR's objections and order CDCR to produce

5   documents responsive to this request. Rocky Bundesen Jr. was an inmate at the time of the events

6   at issue in this case and observed interactions between Cherniss and Plaintiff. In addition, Bundesen

7   testified during the prison-level hearing on the rules violation report Cherniss issued to Plaintiff as

8   a result of the May 17, 2010 search at issue in this case. *See* Apple Decl., Ex. 20 at DEF POD 14.

9       The reasons for compelling production to this request are the same as those identified for

10  RFP No. 11.

11      <u>CDCR's Arguments Regarding Request for Production No. 15 (CDCR):</u>

12      The same arguments made by CDCR in response to request for production no. 11 apply to

13  this request.

14                  **Request for Production No. 16 (CDCR):**
    All Documents relating to any Rules Report Violation made by Christopher Cherniss
15  against Rocky Bundesen.

16      <u>Response to Request for Production No. 16 (CDCR):</u>
    CDCR objects to this request because the request is overbroad with respect to time
17  and subject matter, is unduly burdensome, oppressive, and harassing because it is not
    relevant to the claims asserted, calls for the production of documents protected from
18  disclosure under California Code of Regulations, title 15, sections 3321 (official
    information privilege), 3370, and 3450, and disclosure of responsive documents
19  could compromise the safety and security of the prison, prison staff, and inmates.
    The request also seeks private third party information, and the request does not
20  indicate that the third party inmate has consented or has received notice regarding
    the request for his information.
21
    The request is also unduly burdensome, oppressive, harassing, and violates the
22  proportionality requirement of Rule 26(b)(1) of the Federal Rules of Civil Procedure
    because rules violation reports are not sortable by the identity of the issuing officer.
23  Therefore, to fully and completely comply with this request, CDCR would need to
    manually review each and every rules violation report issued to the subject inmate
24  over the course of his entire incarceration (assuming such records are even in
    CDCR's possession, custody, or control). CDCR will not produce any documents in
25  response to this request.

26      <u>Plaintiff's Arguments Regarding Request for Production No. 16 (CDCR):</u>

27      Plaintiff requests that the Court overrule CDCR's objections and order CDCR to produce

28  documents responsive to this request.

As explained above, Bundesen was a percipient witness to interactions between Cherniss and Plaintiff. In addition, both Bundesen and Cherniss appeared at and testified at the hearing regarding the rules violation report Cherniss issued to Plaintiff as a result of the May 17, 2010 search at issue in this case. *See* Apple Decl., Ex. 20 at DEF POD 14. Plaintiff is entitled to the requested information as evidence of interactions between Plaintiff's potential witness and Cherniss, evidence of potential bias by Cherniss against Plaintiff's witness, or evidence that Cherniss issued rules violation report(s) to Bundesen after Bundesen testified in Plaintiff's favor. The reasons for overruling CDCR's objections to this request are otherwise the same as those identified for RFP No. 12.

### CDCR's Arguments Regarding Request for Production No. 16 (CDCR):

The same arguments made by CDCR in response to request for production no. 12 apply to this request.

Plaintiff's proffered rationale for seeking these documents also does not make sense. Even if Cherniss issued a rules violation report to Bundesen, his actions would not have any tendency to demonstrate bias or unfair action. *Gauthier v. Dexter*, 573 F.Supp.2d 1282, 1289 (C.D. Cal. 2008) (no bias shown from guilty adjudication of rules violation report). Plaintiff's theory of relevance is also concerning because it appears to disproportionately expand the scope of this case to include the re-litigation of retaliation claims that have already been decided, and do so on behalf of inmates who are not even parties to this case. As noted above, Plaintiff previously claimed that Cherniss retaliated against him by issuing him a rules violation report. That claim has already been decided in Cherniss's favor. (ECF No. 181.) Plaintiff's theory of relevance is simply a transposition of this discredited claim to Bundesen, and Plaintiff should not be permitted to seek evidence on Bundesen's behalf to see if Bundesen can assert any kind of retaliation claim.

### Request for Production No. 19 (CDCR):

Documents sufficient to show Your document preservation policies applicable to each document responsive to the requests above from the time of that document's creation onward.

### Response to Request for Production No. 19 (CDCR):

CDCR objects to this request because it is overbroad with respect to time and subject matter. As phrased, the request requires production of all document preservation

policies used by CDCR or any of its "divisions, departments, or other organizational or operational units" at "all facilities and prisons owned, operated or managed by CDCR." Compliance with this request is thus unduly burdensome, oppressive, and harassing because it seeks documents that lack relevance to the claims in this case, and the burdens of compliance with the request outweigh any benefit. CDCR also objects because the document retention policies used by state agencies and subsidiaries of state agencies are publicly available online, and are thus equally available to Plaintiff. The request is thus not proportional to the needs of the case under Rule 26(b)(1) of the Federal Rules of Civil Procedure. Absent clarification of the request, CDCR will not produce any documents in response to this request.

<u>Plaintiff's Arguments Regarding Request for Production No. 19 (CDCR):</u>

Plaintiff requests that the Court overrule CDCR's objections and order CDCR to produce documents responsive to this request.

In an attempt to narrow this request and assuage CDCR's concerns regarding this request, Plaintiff agreed that this request "may be limited to Rules Violation Reports, Staff Complaints, and documents generated as a result of CDCR's investigation into or adjudication of Staff Complaints and Rules Violation Reports." Apple Decl., Ex. 3 at 2. Further, Plaintiff agreed that if such documents are available online, CDCR may comply with the request by providing a URL to the document and stipulating as to its authenticity. *Id.*, Ex. 1 at 3.

Despite these concessions, CDCR refuses to produce documents responsive to this request. CDCR admitted in its previous March 16, 2018 response to RFP No. 2 that at least the rough draft of the rules violation report issued by Cherniss against Heilman in connection with the events at issue in this case "would not have been maintained following the resolution of the rules violation report." *Id.*, Ex. 10 at 2:16–3:2. The basis for CDCR's assertion that the rough draft "would not have been maintained"—*i.e.*, the document preservation policy governing that rough draft—should be produced. Additionally, CDCR has not produced the logbook as described in Plaintiff's Arguments Regarding RFP No. 3 and the logbook does not appear in CDCR's Privilege Log. *See id.*, Ex. 12. Generally, CDCR and Defendant Cherniss have not adequately searched for and located documents responsive to Plaintiff's requests for documents regarding the many complaints and investigations into Cherniss' conduct during inmate searches. *E.g.*, *id.*, Ex. 21 at 158:25–4. CDCR's document retention policies should identify which of those documents still exist, and CDCR should therefore produce the document retention policies sought by Plaintiff's narrowed request. *See Cactus Drilling Co., LLC v. Nat'l Union Fire Ins. Co. of Pittsburgh*, No. CIV–12–00191–M, 2014 WL 1338138, at

1   *4 (W.D. Okla. Apr. 2, 2014) (holding relevant and discoverable "document retention and litigation

2   hold practices and policies and whether such policies were followed with respect to [the employee's

3   files].").

4   CDCR's Arguments Regarding Request for Production No. 19 (CDCR):

5   First, CDCR disagrees with Plaintiff's version of the meet and confer communications

6   regarding this request for production of documents. (Apple Decl. Ex. 3.) As explained during the

7   April 11, 2018 meet and confer call, CDCR is a large state agency with many different divisions

8   and institutions. Because the request does not specify any particular documents or any particular

9   institutions or divisions, it is impossible for CDCR to determine with reasonable particularity what

10  is being requested. During the meet and confer call, CDCR suggested, and Plaintiff agreed, that he

11  would compile a list of specific documents and identify which institution's retention policies for

12  those documents he wanted. (Onitsuka Decl. Ex. E, ECF No. 229-1.) No such list was ever provided,

13  nor is a request for all document retention policies for "Rules Violation Reports, Staff Complaints,

14  and documents generated as a result of CDCR's investigation into or adjudication of Staff

15  Complaints and Rules Violation Reports" sufficiently narrow.

16  The request, including terms as defined in the request, still requires production of all

17  document preservation policies used by CDCR or any of its "divisions, departments, or other

18  organizational or operational units" at "all facilities and prisons owned, operated or managed by

19  CDCR" regarding those categories of documents. (Apple Decl. Ex. 8.) Such a request is overbroad

20  and seeks entirely irrelevant information. It does not matter how, say, Centinela State Prison,

21  maintains its rules violation reports because none of Plaintiff's allegations involve anything that

22  happened at Centinela State Prison. Yet compliance with this document request would require an

23  investigation and production of document retention policies and practices at Centinela State Prison,

24  as well as any other institution or agency controlled by CDCR. The request is thus overbroad, and

25  does not describe the documents sought with reasonable particularity. *Mailhoit v. Home Depot

26  U.S.A., Inc.*, 285 F.R.D. 566, 571 (C.D. Cal. 2012) (denying motion to compel where "extremely

27  broad description of the material sought by this category fails to put a 'reasonable person of ordinary

28  intelligence' on notice of which specific documents or information would be responsive to the

1   request").

2       Second, Plaintiff had a variety of other methods available to identify relevant document

3   retention policies, but did not pursue any of them. For instance, Plaintiff could have served

4   interrogatories asking parties in the litigation to identify document retention policies that applied to

5   particular documents, or determine whether specific documents had been destroyed. Either of these

6   interrogatories could have been written to be proportional to the needs of the case, and could have

7   substantially narrowed the information sought. But Plaintiff did not do this.

8       Third, Plaintiff asserts, without any justification, that CDCR has not conducted a search for

9   documents responsive to Plaintiff's requests. He cites, as evidence of this purported failure, his

10  request for the production of an institutional logbook, which was not requested in this litigation until

11  the filing of this motion to compel. CDCR personnel have worked diligently and in good faith to

12  comply with Plaintiff's often vague and overbroad document requests regarding an incident that

13  happened nearly ten years ago. (Ebert Decl. ¶ 3; Ebert Supp. Decl. ¶ 3.) CDCR proposed a

14  reasonable compromise to comply with this request, and Plaintiff agreed to that approach. Plaintiff

15  did not follow through and was not diligent in pursuing these documents, and CDCR should not be

16  required to further respond.

17      **C.    RFP Nos. 4–5 to Cherniss**

18              **Request for Production No. 4 (Cherniss):**
19      All Documents related to any accusation of, investigation of, or occurrence of sexual
        assault, sexual harassment, or sexual misconduct committed by Christopher
20      Cherniss.

21              Response to Request for Production No. 4 (Cherniss):
22      Defendant objects to this request because it is overbroad with respect to time and
        subject matter, and is vague with respect to the phrases "accusation of, investigation
23      of, or occurrence of," and "sexual assault, sexual harassment, or sexual misconduct."
        The request calls for the production of documents that are protected from disclosure
24      under the official information privilege, California Code of Regulations, title 15,
        sections 3321 (official information privilege) and 3450, California Penal Code
25      sections 832.7 and 832.8, and California Evidence Code sections 1043 through 1045.
        The request also violates the privacy rights of the listed staff and of any involved
26      inmates.

27      The request is also unduly burdensome, oppressive, harassing, and violates the
        proportionality requirement of Rule 26(b)(1) of the Federal Rules of Civil Procedure
28      because, to the extent inmate appeals may be responsive to this request, inmate
        appeals are kept in the central file of the inmate who filed it. Therefore, to fully and

1   completely comply with this request, Defendant would need to search the central file
2   of every inmate who has come into contact with Defendant over the entire course of
    his career. Identifying and tracking down all the case files for all such inmates, even
3   if limited to the relevant time period, will create a separate, but equally burdensome
    and expensive, hardship (assuming such records are even in Defendant's possession,
4   custody, or control). It also calls for the production of irrelevant materials. Defendant
    will not be producing documents responsive to this request, and documents
5   responsive to this request that are withheld on the basis of privilege will be listed on
    a privilege log provided by nonparty CDCR.

6                  <u>Plaintiff's Arguments Regarding Request for Production No. 4 (Cherniss):</u>

7          Plaintiff requests that the Court overrule the Cherniss' objections and order Cherniss to

8   produce documents responsive to this request.

9          Plaintiff does not seek to have Cherniss produce documents that have already been or will

10  be produced in this case. Instead, Plaintiff seeks an order compelling production of any responsive

11  documents that are in the possession, custody, or control of Cherniss and not CDCR. For example,

12  in the lawsuit filed by inmate Harbor (*see* RFP No. 4 to the subpoena to CDCR), it appears that there

13  may be a settlement between Cherniss and Harbor. *See* Apple Decl., Ex. 27 (Stipulation for

14  Voluntary Dismissal of Harbor's case) and Ex. 21 at 164:25–165:7 (Cherniss testifying that he was

15  informed the case settled). However, Defendant Cherniss testified that as of April 19 he had not

16  even searched for documents responsive to Plaintiff's requests. *See id.*, Ex. 21 at 158:25–4. To the

17  extent that Cherniss has such documents and CDCR does not, Plaintiff requests that the Court order

18  Cherniss to search for and produce them.

19         The reasons for compelling production to this request are the same as those identified for

20  RFP No. 4 to the subpoena to CDCR.

21                 <u>Defendant Cherniss' Arguments Regarding Request for Production No. 4 (Cherniss):</u>

22         Defendant did not produce any documents in response to this request, and, as explained in

23  Defendant's response, all responsive documents withheld on the basis of privilege, whether in

24  Cherniss's or CDCR's possession, were listed on the privilege log provided by CDCR.

25         First, Plaintiff's request for settlement documents related to *Harbor v. Cherniss* is a new

26  one; the request first made its appearance on May 2, 2018, only six days before the discovery

27  deadline in this case. (Declaration of Jason German ("German Decl.") Ex. 7, ECF No. 224-2.) No

28  attempt was ever made to meet and confer regarding these documents, and Plaintiff never served a

document request asking for these documents. *Rogers v. Giurbino*, 288 F.R.D. 469, 477 (S.D. Cal. 2012) ("A court can deny a motion to compel solely because of a party's failure to meet and confer prior to filing the motion."); *Aquino v. Ugwveze*, Case No. 1:08-cv-01639-AWI-SKO (PC), 2010 WL 2302475, at *1 (E.D. Cal. June 7, 2010) ("Plaintiff may not file a motion to compel production of a document that he has not yet requested from Defendants directly.").

Second, it is entirely unclear why Plaintiff believes that Cherniss possesses documents that are not in the possession, custody, or control of CDCR with respect to this issue. Cherniss testified at his deposition that he was not involved in any settlement:

Q. And I understand. Did you have any involvement in the settlement terms of that case?

A. No.

Q. Is it that you don't recall having involvement or can you affirmatively say you had no involvement in the settlement terms?

A. As far as I know, I have no involvement with that.

(Apple Decl. Ex. 21 at 165:8-15.)

Third, even if Cherniss did have control over such documents, both Cherniss and Harbor would have a significant privacy interest in them, and Plaintiff does not make any showing of relevance to overcome that interest. *Marsh v. Bloomberg Inc.*, Case No. 16-CV-02647-MEJ, 2017 WL 2224250, at *2 (N.D. Cal. May 22, 2017) (denying motion to compel settlement agreement because "[p]laintiff also fails to address the confidential nature of settlement agreements she requests in RFP No. 26, or explain why her need for such confidential documents outweighs the privacy interests of the parties who entered into them.").

To the extent that the motion seeks to compel the production of documents similar to those in the request for production of documents no. 4 to CDCR, the same arguments also apply here.

**Request for Production No. 5 (Cherniss):**
All Documents related to any accusation of, investigation of, or occurrence of improper searching of a CDCR inmate committed by Christopher Cherniss.

Response to Request for Production No. 5 (Cherniss):
Defendant objects to this request because it is overbroad with respect to time and subject matter, and is vague with respect to the phrases "accusation of, investigation

Of, or occurrence of," and "improper searching." The request calls for the production of documents that are protected from disclosure under the official information privilege, California Code of Regulations, title 15, sections 3321 (official information privilege) and 3450, California Penal Code sections 832.7 and 832.8, and California Evidence Code sections 1043 through 1045. The request also violates the privacy rights of the listed staff and of any involved inmates.

The request is also unduly burdensome, oppressive, harassing, and violates the proportionality requirement of Rule 26(b)(1) of the Federal Rules of Civil Procedure because, to the extent inmate appeals may be responsive to this request, inmate appeals are kept in the central file of the inmate who filed it. Therefore, to fully and completely comply with this request, Defendant would. need to search the central file of every inmate who has come into contact with Defendant Cherniss over the entire course of his career. Identifying and tracking down all the case files for all such inmates, even if limited to the relevant time period, will create a separate, but equally burdensome and expensive, hardship (assuming such records are even in Defendant's possession, custody, or control). It also calls for the production of irrelevant materials. Defendant will not be producing documents responsive to this request, and documents responsive to this request that are withheld on the basis of privilege will be listed on a privilege log provided by nonparty CDCR.

<u>Plaintiff's Arguments Regarding Request for Production No. 5 (Cherniss):</u>

Plaintiff requests that the Court overrule the Cherniss' objections and order Cherniss to produce documents responsive to this request.

As for RFP No. 4 to Cherniss, Plaintiff does not seek to have Cherniss produce documents that have already been or will be produced in this case. Instead, Plaintiff seeks an order compelling production of any responsive documents that are in the possession, custody, or control of Cherniss and not CDCR.

The reasons justifying Plaintiff's request are the same as those identified for RFP No. 4 to Cherniss.

<u>Defendant Cherniss' Arguments Regarding Request for Production No. 5 (Cherniss):</u>

The same arguments made by CDCR in response to request for production no. 4 apply to this request.

**D.      <u>Interrogatory Nos. 3–4 to Cherniss</u>**

**<u>Interrogatory No. 3 (Cherniss):</u>**

Not including I/M Heilman's allegation against you for sexual misconduct, please desribe the circumstances concerning other I/M allegations against you for sexual misconduct/sexual assault or sexual harassment, made on 602 appeal/staff complaint, and how many.

<u>Supplemental Response to Interrogatory No. 3 (Cherniss):</u>

Defendant objects to this interrogatory because it is overbroad with respect to time and subject matter, and is vague with respect to the phrases "sexual

1
2
3

misconduct/sexual assault or sexual harassment." The interrogatory is also requesting private information and invades the privacy rights of Defendant, as well as of any complaining inmate(s). The scope of the interrogatory is not proportional to the needs of the case because it seeks information that is not relevant to the resolution of the issues in this case and the burden of responding to the interrogatory outweighs its likely benefit. The interrogatory is also compound.

4
5
6
7

Subject to and without waiving any objections, Defendant responds as follows: I have responded to six inmate staff complaints concerning clothed body searches that were conducted as I was instructed at the California Department of Corrections Training Academy. In each of those instances, investigating staff determined that I followed appropriate search procedures and that no violation of CDCR policy occurred.

8

<u>Plaintiff's Arguments Regarding Interrogatory No. 3 (Cherniss):</u>

9
10

Plaintiff requests that Cherniss be ordered to provide a complete, non-evasive response to this interrogatory.

11
12
13
14

Cherniss' response to this interrogatory is incomplete and evasive because the response is limited to only staff complaints that Cherniss "responded to." The interrogatory encompasses all staff complaints alleging that Cherniss committed sexual misconduct, whether or not Cherniss responded to the complaint.

15
16
17
18
19
20
21

Cherniss also failed to describe the circumstances of the allegations. Cherniss' response to this interrogatory describes only the final result of CDCR investigations into these allegations. However, the response does not provide the identity of the complaining inmates, the identity of witnesses to the events described in the complaints, the dates and times the events giving rise to the complaints occurred, the locations that the events giving rise to the complaints took place, and the events that led to the complaints of sexual misconduct. These basic circumstances—who, what, where, when, why—should be provided.

22
23
24
25
26
27
28

Cherniss' objections as to the supposed vagueness of the terms "sexual misconduct/sexual assault or sexual harassment" should be overruled. This objection was made for the first time in his May 4, 2018 supplemental responses and is therefore waived. *See* Fed. R. Civ. P. 33(b)(4). Further, Cherniss cannot credibly claim these terms are vague when he understood the meaning of these terms at his recent deposition. Specifically, Cherniss testified that, as a certified instructor for CDCR on sexual harassment and Prison Rape Elimination Act, Apple Decl., Ex. 21 at 60:7–61:17, he understands the term "sexual misconduct" to mean:

[B]eing sexually inappropriate. According [to the] PREA, it would be either sexually harassing an inmate verbally, it would be engaging in sexual touching on top of the clothing or it would be considered sexual penetration, which means under the clothing into an orifice.

*Id.* at 117:7–18.

Defendant's objection that this interrogatory is compound should also be overruled. This objection was made for the first time in the May 4, 2018 supplemental responses and is therefore waived. *See* Fed. R. Civ. P. 33(b)(4). Even assuming the objection is not waived, it is not clear what about the interrogatory is compound, and Cherniss' objection does not explain how it is compound. Sexual assault and sexual harassment are species of sexual misconduct, and describing the circumstances of each allegation would necessarily reveal the number of allegations. Even if the interrogatory were compound, the Court should direct Cherniss to provide responses to the extent possible. *See, e.g.*, *Willis v. Ritter*, No. 04-CV-2303-WQH (JMA), 2007 WL 2455873, at *2 (S.D. Cal. Aug. 24, 2007).

<u>Defendant Cherniss' Arguments Regarding Interrogatory No. 3 (Cherniss):</u>

First, the response to the interrogatory is accurate, whether or not it is conditioned on the words "responded to." As explained in the meet and confer communications between the parties, the response "accurately describe[s] the . . . number of the subject staff complaints." (Apple Decl. Ex. 7.) The response is not artificially limiting the number of staff complaints based on Cherniss's involvement (or alleged lack thereof) in the response to the staff complaint, and is based on a diligent search of institutional records regarding responsive staff complaints. (Ebert Decl. ¶ 3; Ebert Supp. Decl. ¶ 3.)

Second, the response accurately describes the "circumstances" of the staff complaints. The response describes the nature of the conduct that was complained of ("clothed body searches"), the substance of the underlying conduct, and the outcome of the complaints. The interrogatory, reasonably read, does not request the identity of the complainant for any staff complaint, the identities of witnesses to any underlying conduct, or anything else in the list of information Plaintiff now claims that the interrogatory encompasses.

Third, the Court has previously determined that a response providing identical information

to this interrogatory was full and complete. (ECF No. 57.) The original response to this interrogatory read, in relevant part:

> Without waiving those objections, Responding Party has responded to one other staff complaint by an inmate regarding a clothed body search that was also conducted according to the manner set forth by the California Department of Corrections Training Academy as described in the response to Interrogatory No. 1. It was determined in that matter that Responding Party followed the proper search procedures.

(Apple Decl. Ex. 16.) Plaintiff filed a motion to compel with respect to that response, claiming that the response was "inadequate and incomplete." (Plaintiff's Motion to Compel 8:19-9:3, ECF No. 50.) The Court denied Plaintiff's motion, saying that "defendant appears to have provided complete responses to these interrogatories." (Order on Motion to Compel 6:3-5, ECF No. 57.) It is thus unclear why a supplemental response, which provides the same, but updated, information, would be incomplete or evasive.

**Interrogatory No. 4 (Cherniss):**

Please explain the results of all investigations conducted into allegations by CDCR inmates against you for sexual misconduct or sexual assault.

Supplemental Response to Interrogatory No. 4 (Cherniss):

Defendant objects to this interrogatory because it is overbroad with respect to time and subject matter, and is vague with respect to the phrases "sexual misconduct or sexual assault." The interrogatory is also requesting private information and invades the privacy rights of Defendant, as well as of any complaining inmate. The scope of the interrogatory is not proportional to the needs of the case because it seeks information that is not relevant to the resolution of the issues in this case and the burden of responding to the interrogatory outweighs its likely benefit. The interrogatory is also compound.

Subject to and without waiving any objections, and to the extent the interrogatory is referring to investigations into the same staff complaints referenced in Interrogatory No. 3, Defendant responds as follows: In each inmate staff complaint I have responded to, investigating staff determined that I followed appropriate search procedures and that no violation of CDCR policy occurred.

Plaintiff's Arguments Regarding Interrogatory No. 4 (Cherniss):

Plaintiff requests that Cherniss be ordered to provide a complete, non-evasive response to this interrogatory. This response is incomplete and evasive because it is limited to only those investigations identified in Cherniss' Response to Interrogatory No. 3. Cherniss improperly limited that response to complaints that Cherniss "responded to." However, this request seeks information about "<u>all</u> investigations," not merely those Cherniss responded to.

1    The objections to this interrogatory should be overruled for the same reasons as those in

2  Interrogatory No. 3.

<u>Defendant Cherniss' Arguments Regarding Interrogatory No. 4 (Cherniss):</u>

4    As explained above, Defendant Cherniss has not attempted to evade the interrogatory or

5  parse words in his response, and the response is entirely accurate. Similarly, the Court previously

6  reviewed a similar response to this interrogatory, and determined that it was a complete response.

7  (Order on Motion to Compel 6:3-5, ECF No. 57.)

8  **III.    MEET-AND-CONFER EFFORTS**

9    The parties met and conferred regarding the discovery at issue in this Joint Statement. On

10  April 4, 2018, counsel for Plaintiff sent a letter to counsel for CDCR and Defendants regarding

11  CDCR's responses to Plaintiff's subpoena. *See* Apple Decl., Ex. 1. Counsel had a telephonic

12  conference on these issues on April 11. *See id.*, Ex. 3 (email thread memorializing that conference).

13  In response to later-served discovery responses and production, the parties conferred by email. *See*

14  *id.*, Ex. 7.

DATED: May 30, 2018

Respectfully submitted,

*/s/ Sean K. Apple*

ELIOT D. WILLIAMS (SBN 290780)
eliot.williams@bakerbotts.com
JASON R. GERMAN (SBN 280837)
jason.german@bakerbotts.com
SEAN K. APPLE (SBN 305692)
sean.apple@bakerbotts.com
**BAKER BOTTS L.L.P.**
1001 Page Mill Road, Suite 200
Palo Alto, California 94304
Telephone: 1-650-739-7500
Facsimile:  1-650-739-7699
Attorneys for Plaintiff
THOMAS JOHN HEILMAN

*/s/ Tyler H. Onitsuka*
(as authorized on May 30, 2018)

TYLER H. ONITSUKA (SBN 267307)
Tyler.Onitsuka@doj.ca.gov
**Office of the Attorney General**
1300 I Street
Sacramento, CA 95814
Telephone: 1-916-210-7557
Facsimile:  1-916-324-5205
Attorneys for Defendants
CHRISTOPHER CHERNISS
LARRY LESANE
And
Nonparty
CALIFORNIA DEPARTMENT OF
CORRECTIONS AND
REHABILITATION