1 | ELIOT D. WILLIAMS (SBN 290780)
  | eliot.williams@bakerbotts.com
2 | JASON R. GERMAN (SBN 280837)
  | jason.german@bakerbotts.com
3 | SEAN K. APPLE (SBN 305692)
  | sean.Apple@bakerbotts.com
4 | **BAKER BOTTS L.L.P.**
  | 1001 Page Mill Road, Suite 200
5 | Palo Alto, California 94304
  | Telephone:    +1-650-739-7500
6 | Facsimile:    +1-650-739-7699

7 | *Attorneys for Thomas John Heilman*

8 | XAVIER BECERRA, State Bar No. 118517
  | Attorney General of California
9 | MICHELLE L. ANGUS, State Bar No. 210031
  | Supervising Deputy Attorney General
10 | TYLER ONITSUKA, State Bar No. 267307
   | Deputy Attorney General
11 |   1300 I Street, Suite 125
   |   P.O. Box 944255
12 |   Sacramento, CA 94244-2550
   |   Telephone: (916) 210-7557
13 |   Fax: (916) 324-5205
   |   E-mail: Tyler.Onitsuka@doj.ca.gov

14 | 
15 | *Attorneys for Defendants L. Lesane, C. Cherniss*

16 | **UNITED STATES DISTRICT COURT**

17 | **EASTERN DISTRICT OF CALIFORNIA**

18 | **SACRAMENTO DIVISION**

| | |
|---|---|
| THOMAS JOHN HEILMAN, | Case No. 2:11-cv-00042-JAM-EFB |
| Plaintiff, | **JOINT STATEMENT REGARDING PLAINTIFF HEILMAN'S MOTION TO TAKE DEPOSITIONS OF MORE THAN 10 WITNESSES** |
| v. | |
| C. CHERNISS, et al., | **Date**: August 22, 2018 |
| Defendants. | **Time**: 10:00 am |
| | **Judge:** Honorable Magistrate Judge Edmund F. Brennan |

# TABLE OF CONTENTS

**Page**

I.        NOTICE OF MOTION AND MOTION .......................................................................... 3

II.       BACKGROUND ........................................................................................................... 3

III.      PLAINTIFF'S CONTENTIONS .................................................................................... 3

    A.     Legal Standard............................................................................................................ 3

    B.     The Witnesses Plaintiff Seeks to Depose Have Unique and Relevant Information
Regarding Defendant Cherniss's Sexual Misconduct .................................................. 4

    C.     Defendant Only Recently Produced Information Revealing the Scope of Defendant
Cherniss's Misconduct and Identifying Relevant Witnesses ..................................... 11

    D.     The Additional Depositions Plaintiff Seeks are Not Overly Burdensome.................... 11

IV.      DEFENDANT'S CONTENTIONS .............................................................................. 12

V.       MEET-AND-CONFER EFFORTS............................................................................... 19

1              **Joint Statement**

2    **I.     NOTICE OF MOTION AND MOTION**

3              TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD, PLEASE TAKE NOTICE

4    THAT: on August 22, 2018, or as soon hereafter as this matter may be heard in Courtroom 8, Fl.

5    13 of the United States District Court for the Eastern District of California, Sacramento Division,

6    501 I Street, Sacramento, CA 95814, Plaintiff Thomas Heilman will and hereby does move the

7    Court to grant leave for Plaintiff to take more than 10 depositions in this case. This motion is

8    based on the Joint Statement filed herewith, and is made pursuant to and in accordance with Fed.

9    R. Civ. P. 30(a)(2) and 26(b) and E.D. Cal. Local Rule 251.

10   **II.    BACKGROUND**

11             Plaintiff Heilman, acting *pro se* and *in forma pauperis*, filed this civil-rights case on

12   January 5, 2011. Plaintiff's complaint asserts that Defendants Cherniss and Lesane, a correctional

13   officer and correctional sergeant, respectively, at California Medical Facility in Vacaville, violated

14   Plaintiff's Fourth and Eighth Amendment rights with a series of sexually abusive searches.

15             Plaintiff moved to reopen discovery, and the Court granted Plaintiff's request on February

16   8, 2018. Dkt. No. 218. Plaintiff subsequently moved to extend discovery and compel production

17   and documents and responses from the California Department of Corrections and Rehabilitation

18   ("CDCR"). Dkt. Nos. 225, 230. The Court granted Plaintiff's requests and set the close of fact

19   discovery for September 4, 2018. Dkt. Nos. 234, 235.

20             Plaintiff has taken four depositions totaling 14 hours of deposition time. Plaintiff deposed

21   Defendants Cherniss and Lesane, as well as two non-party CDCR employees identified on

22   Defendants' initial disclosures. Plaintiff seeks to take 17 total depositions in this case, and after the

23   parties conferred regarding the issue, Defendants would not stipulate to Plaintiff's request to take

24   depositions of more than 10 witnesses. Plaintiff therefore moves the Court for leave to take

25   depositions of more than 10 witnesses.

26   **III.   PLAINTIFF'S CONTENTIONS**

27          **A.    Legal Standard**

28             Fed. R. Civ. P. 30(a) (2)(A)(i) states that a party must obtain leave of court to take more

than ten depositions if the other parties in the case have not stipulated to more than ten. To determine whether to grant leave, the court should apply Fed. R. Civ. P. 26(b)(2)(C) which states that the court should consider (i) if the discovery is cumulative or duplicative or can be obtained by more convenient, less burdensome, or less expensive means, (ii) if the party seeking discovery has had ample opportunity to obtain the sought information, and (iii) if the burden of the requested discovery outweighs the benefit. *Couch v. Wan*, Case No. 1:08-cv-1621-LJO-DLB, 2011 WL 4499976, at *1 (E.D. Cal. Sept. 27, 2011) (granting 10 depositions in addition to the 10 allowed by Fed R. Civ. P. 30). The moving party need not exhaust its ten depositions before moving for additional depositions if it can show the complexity of the case warrants additional depositions. *Id.*

**B.**    **The Witnesses Plaintiff Seeks to Depose Have Unique and Relevant Information Regarding Defendant Cherniss's Sexual Misconduct**

"A defendant with a propensity to commit acts similar to those charged is more likely to have committed the charged act than another and therefore such evidence is relevant and in conformity with the standards set out in Fed. R. Evid. 401 & 402." *Doe ex rel. Rudy-Glanzer v. Glanzer*, 232 F.3d 1258, 1268 (9th Cir. 2000) (analyzing Fed. R. Evid. 415). In fact, evidence of prior sexual assaults is necessary "in a case where [Defendant's] primary defense [is] to attack the victim's credibility." *U.S. v. Charles*, 691 F. App'x 367, 370 (9th Cir.), *cert. denied*, 138 S. Ct. 348 (2017); *see also United States v. LeMay*, 260 F.3d 1018, 1027–28 (9th Cir. 2001) (noting that by admitting evidence of prior sexual abuse, the court "made use of the prior acts evidence in precisely the manner Congress contemplated" in a case where "[Defendant] attacked [the Plaintiff's] credibility and suggested that there was not enough evidence to prove their allegations"). Discovery from live witnesses is crucial in cases where written records may be insufficient to provide the discovery sought. *Couch v. Wan*, 2011 WL 4499976, at *2.

As explained below, 12 of the 13 witnesses that Plaintiff seeks to depose has either made or investigated allegations of Defendant Cherniss's prior similar acts of sexual misconduct. Those prior acts show a pattern of sexual assault by Defendant Cherniss. The prior acts corroborate Plaintiff's allegations and show Defendant Cherniss's propensity to commit the sexual misconduct alleged in this case. The prior acts are probative of Defendant Cherniss's opportunity to commit

1   the alleged acts and illustrate that the misconduct was intentional and not due to mistake or

2   accident. The prior acts rebut Defendants' allegations that Plaintiff is not telling the truth about

3   what occurred during his searches. In addition, to the extent Defendants intend to respond the

4   evidence of Cherniss's sexual misconduct by pointing to the CDCR's investigations and findings

5   regarding those allegations, then Plaintiff is entitled to probe this into the CDCR's handling of

6   those investigations and its findings. In sum, each of the witnesses below has evidence that is not

7   only relevant but also that is likely admissible at trial to assist the jury in deciding this case.

8   Plaintiff therefore seeks leave to depose more than 10 witnesses.

9          Each of the following witnesses has alleged one or more distinct acts of sexual misconduct

10  by Cherniss:

11          1.  Travyon Harbor is currently confined in prison, and in granting leave to depose

12              Harbor, the Court noted that Harbor "made sexual assault allegations against

13              defendant Cherniss similar to the ones at issue in this case." Dkt. No. 235 at 2; *see*

14              *also* German Decl., Ex. 4. The Court further found that "denying plaintiff the

15              ability to depose these inmates [Harbor and Dyas] would deprive his counsel of the

16              opportunity to ask potentially valuable follow-up questions about the alleged

17              events." *Id.* Travyon Harbor has relevant, non-duplicative information about

18              evidence that is both relevant and likely to be admissible at trial, and Plaintiff

19              therefore seeks to depose him.

20          2.  Gregory Dyas is also currently confined in prison, and also "made sexual assault

21              allegations against defendant Cherniss similar to the ones at issue in this case." Dkt.

22              No. 235 at 2; *see also* German Decl., Ex. 4. As the Court previously found,

23              "denying plaintiff the ability to depose these inmates [Harbor and Dyas] would

24              deprive his counsel of the opportunity to ask potentially valuable follow-up

25              questions about the alleged events." *Id.* Gregory Dyas has relevant, non-duplicative

26              information about evidence that is both relevant and likely to be admissible at trial,

27              and Plaintiff therefore seeks to depose him.

28          3.  Charles Edwards alleged that Cherniss _____

German Decl., Ex. 5 at SDT 51, 59–60. These allegations of prior sexual assault are similar to the sexual assault alleged in this case. Charles Edwards has relevant, non-duplicative information about evidence that is both relevant and likely to be admissible at trial, and Plaintiff therefore seeks to depose him

4.   Daniel Patillo alleged that "on more than one occasion . . . Cherniss stopped [him] and physically searched [him] in a manner [he] considered wrong and inappropriate." Dkt. No. 63 at 64. Specifically, "Cherniss would run his hands up [Patillo's] legs grasping [Patillo's] testicles and fondle [Patillo's] genitals." Dkt. No. 63 at 64. Additionally, Cherniss "made a joke about this by saying 'Do you have anything big up there'." Dkt. No. 63 at 64. Patillo's allegations of sexual assault by Defendant Cherniss are similar to the sexual assault alleged against Defendant Cherniss in this case. This witness has relevant, non-duplicative information about evidence that is both relevant and likely to be admissible at trial, and Plaintiff therefore seeks to depose him.

5.   Victor Cordero has alleged that Defendant Cherniss German Decl., Ex. 6 at SDT 67. Cordero submitted a declaration that Cherniss "touched [him] inappropriately in a [] search" "as a punitive and manipulative tactic," and that he was handcuffed, brought to his housing unit, and "strip-searched by C/O Cherniss" as retaliation. Dkt. No. 63 at 63. These allegations of inappropriate touching during searches, in particular the allegations of , are similar to the allegations of sexual assault against Defendant Cherniss in this case. Victor Cordero thus has relevant, non-duplicative information about evidence that is both relevant and likely to be admissible at trial, and Plaintiff therefore seeks to depose him.

6.   Timoteo Gomez has alleged that Defendant Cherniss

German Decl., Ex. 5 at SDT 54. These allegations of prior sexual misconduct during a search are similar to the sexual assault alleged in this case. T. Gomez thus has relevant, non-duplicative information about evidence that is both relevant and likely to be admissible at trial, and Plaintiff therefore seeks to depose him.

7. Tracy Sullivan, a Visiting Office Technician at California Medical Facility, filed an EEO complaint against Defendant. Sullivan alleges that Defendant Cherniss would

German Decl., Ex. 9 at SDT 202.

*Id.* at SDT 203. That Defendant Cherniss

is indicative of Defendant Cherniss's propensity for inappropriate physical contact as well as his lack of regard for rules and laws governing his professional conduct as a Corrections Officer. *See id.* at SDT 207

. Moreover, Sullivan's testimony tends to rebut any assertion by Cherniss that the allegations of sexual assault against him are merely fabrications made to target Cherniss in his role as a prison guard. *See* German Decl., Ex. 11 at 169:15–23. Tracy Sullivan has relevant, non-duplicative information about inappropriate physical contact by Defendant Cherniss that is both relevant and likely to be admissible at trial, and Plaintiff therefore seeks to depose her.

Each of the following witnesses has either investigated one or more of the claims of sexual misconduct by the witnesses above and/or has personally interviewed at least one of the above witnesses about the alleged sexual misconduct:

8. Tony Lee is the Correctional Lieutenant who investigated Travyon Harbor's allegation and Charles Edwards's allegation regarding Defendant Cherniss. Lee's report in Harbor's case noted that Harbor alleged ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ German Decl., Ex. 3 at SDT 3. Lee also noted that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* As part of the investigation, Lee personally observed the behavior and credibility of the witnesses he interviewed. For instance, Lee noticed that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at 9. During Lee's interview of Edwards for the investigation of Edwards's allegation, Lee noted that ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.*, Ex. 5 at SDT 51. Lee made other judgment calls and observations during his witness interviews for his investigation of Edwards's allegation. For instance, Lee ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* at SDT 52. During his interview of witness inmate ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *Id.* Lee personally observed Harbor and Edwards and inmate witnesses in his investigations close in time to the alleged incidents involving Defendant Cherniss. Tony Lee has relevant, non-duplicative information about investigations and witnesses of similar sexual misconduct by Defendant Cherniss, and Plaintiff therefore seeks to depose him.

9. Daniel Ross was the Appeals Interviewer who investigated Heilman's complaint alleging that Defendant Cherniss sexually assaulted him during the May 17, 2010 search, the primary search at issue in this case. *See* German Decl., Ex. 8. Ross, in his Confidential Supplemental Appeal Inquiry, stated that ▮▮▮▮▮▮▮▮▮▮▮▮▮

German Decl., Ex. 8 at

SDT 87. Lesane, however, has repeatedly maintained under oath that he "was not

present for the alleged body search." *See* Dkt. No. 54-7 (Decl. of Lesane in Support

of Summary Judgment) at ¶ 3; German Decl., Ex. 10 at 22:14–21. Plaintiff

therefore needs to depose Ross to investigate these contradictory statements

regarding whether Lesane was present during the search, as well as to determine the

basis for the findings and conclusions in Ross's report. Ross has relevant, non-

duplicative information about the investigation of Defendants' sexual misconduct

and violation of Plaintiff Heilman's rights, and Plaintiff therefore seeks to depose

him.

10. Von Motschenbacher investigated inmate S.J. Alexander's similar complaints of

sexual misconduct by Defendant Cherniss. German Decl., Ex. 7 at SDT 82. S.J.

Alexander filed a complaint that Defendant Cherniss

*Id.* at SDT 78. Alexander complained that

*Id.* at SDT 79. Von Motschenbacher thus has relevant, non-duplicative information

about the investigation of Cherniss's sexual misconduct, and Plaintiff therefore

seeks to depose him.

11. Nicole Daniel is the Correctional Sergeant who interviewed Tracy Sullivan and

learned of her complaint regarding Defendant Cherniss's

German Decl., Ex. 9 at SDT 209. Daniel observed that

*Id.* Daniel personally observed Sullivan close in time to the alleged incidents

involving Defendant Cherniss, and Daniel's report of the incident initiated CDCR's

investigation into the same. Nicole Daniel has relevant, non-duplicative

1    information about the investigation of Sullivan's allegation of _____

2    _____ by Defendant Cherniss, and Plaintiff therefore seeks to depose her.

3    The following witnesses have relevant, non-duplicative information, as explained below:

4    12. Michele Ortega is the Special Agent In-Charge at the Office of Internal Affairs who

5    reviewed

6    _____ Despite documentation of numerous similar

7    complaints regarding Defendant Cherniss's sexual misconduct, Ortega

8    _____

9    Because _____, there is insufficient documentation of Ortega's

10   investigation or decision-making process in denying the request for investigation.

11   *See* German Decl., Ex. 3 at 1. Ortega therefore has non-duplicative, relevant

12   information about the investigation of Defendant Cherniss's conduct, and Plaintiff

13   therefore seeks to depose her.

14   13. CDCR, the institution in which the alleged sexual assault took place, is responsible

15   for managing California state prisons, and is also the employer of the Defendants in

16   this case. Defendant Cherniss alleges that he acts in conformity with CDCR rules

17   and has further denied prior sexual misconduct allegations by claiming that his

18   search tactics were learned at Basic Correctional Officer Academy. *See, e.g.*,

19   German Decl., Ex. 5 at 53-54. Plaintiff seeks a Fed. R. Civ. P. 30(b)(6) deposition

20   of CDCR to examine, amongst other things, (i) CDCR's investigation of

21   Defendants' sexual misconduct or improper searching, (ii) CDCR's records

22   regarding accusations of sexual misconduct and searching against Defendant

23   Cherniss, (iii) CDCR's policies, unwritten protocols, and enforcement of its

24   policies and protocols regarding sexual misconduct and investigations into sexual

25   misconduct by corrections officers, (iv) CDCR's records regarding Plaintiff and

26   Plaintiff's accusation in this case, (v) CDCR policies, protocols, and training

27   materials regarding searches. *See* German Decl., Ex. 12 (Notice of Subpoena of

28   CDCR).

**C.** **Defendant Only Recently Produced Information Revealing the Scope of Defendant Cherniss's Misconduct and Identifying Relevant Witnesses**

As the Court found when granting Plaintiff's motion to compel, CDCR improperly withheld several documents regarding Defendant Cherniss's sexual misconduct and CDCR's investigation into the same. Dkt. No. 235. Of the 13 witnesses identified in Section B above, only Daniel Patillo and the corporate deposition of CDCR are not identified in the documents CDCR withheld. Plaintiff did not have the information it needed to determine whether to depose the individuals until CDCR produced the improperly withheld information Plaintiff sought, which includes summaries of the misconduct written by Cherniss's victims and reports, written by CDCR employees, describing the CDCR's investigation and disposition of the victims' complaints. Plaintiff could not determine which of the individuals identified above it would use its 10 depositions on until CDCR produced the relevant information Plaintiff requested early in discovery. *Couch v. Wan*, 2011 WL 4499976, at *2 (E.D. Cal. Sept. 27, 2011).

On July 19, less than three weeks after receiving the CDCR's production, Plaintiff's counsel notified Defendants counsel that Plaintiff intended to depose each of the witnesses identified above and asked whether Defendants would stipulate to additional depositions. German Decl., Ex. 1 at 7. Plaintiff sent Defendants Plaintiff's portion of this motion 6 days after Defendants' counsel informed Plaintiff on August 2 that Defendants would not stipulate to more than 10 depositions. *Id.* at 5.

**D.** **The Additional Depositions Plaintiff Seeks are Not Overly Burdensome**

Fed. R. Civ. P. 30 provides that a party may take up to 10 depositions and up to seven hours in each deposition. To the extent that Defendants argue that additional depositions would be overly burdensome, Plaintiff is far from the allotted time permitted under the Federal Rules, having only deposed four witnesses for a total of 14 hours of deposition. Plaintiff's efficient use of deposition time shows that Plaintiff seeks only discovery that is proportional to the needs of the case. So too does Plaintiff's deposition plan, which is significantly narrowed to focus on the most important witnesses of the at least 34 relevant witnesses collectively identified in Plaintiff's motion to reopen discovery, Defendants' initial disclosures, and CDCR's June 27 production.

1  Additionally, Plaintiff and his *pro bono* counsel will bear much of the expense of the depositions,

2  including subpoenas, court reporters, and transcripts, thereby minimizing Defendants' burden.

3  *Couch v. Wan*, 2011 WL 4499976, at *2 (E.D. Cal. Sept. 27, 2011).

4      The importance of the information Plaintiff seeks illustrates that the benefit of the

5  discovery sought outweighs the burden of that discovery. Plaintiff seeks several depositions

6  because several allegations of sexual misconduct have been lodged against Defendant Cherniss.

7  *See* Section B, *supra*. This is not a fishing expedition—12 of the 13 witnesses identified above

8  either alleged specific, separate acts of sexual misconduct by Defendant Cherniss or, pursuant to

9  the duties as CDCR employees, investigated those complaints, such as by interviewing the

10  complainants. *Id.* The remaining deposition Plaintiff seeks is a corporate deposition of CDCR, the

11  entity that has searched for and produced the vast majority of documents in this case.

12  **IV.   DEFENDANT'S CONTENTIONS**

13      Rule 30(a)(2) of the Federal Rules of Civil Procedure sets a presumptive limit of ten

14  depositions for each party in litigation. The purpose of this rule is "to reduce litigation costs . . . by

15  setting a limit on the number of depositions, which is one of the more expensive forms of

16  discovery." *In re At Home Corp.*, No. C 04-0931 MMC(JL), 2005 WL 289976, at *3 (N.D. Cal.

17  Feb. 4, 2005). The ten deposition limit exists to ensure that the deposing party prioritizes its

18  discovery appropriately, and that each deposition is "truly necessary, based in part upon the time

19  and expense that even a single deposition incurs for all parties involved." *Acosta v. Sw. Fuel*

20  *Mgmt., Inc.*, No. 2:16-CV-4547-FMO (AGRx), 2017 WL 8941165, at *7 (C.D. Cal. Sept. 19,

21  2017) (additional depositions must be "absolutely necessary to justify a motion for leave under

22  Rule 30(a)(2)(A)").

23      Thus, "[a] party seeking to exceed the presumptive number of depositions must make a

24  particularized showing of the need for the additional discovery." *Guthrey v. California Dep't of*

25  *Corr. & Rehab.*, No. 1:10-CV-02177-AWI-BAM, 2012 WL 3249554, at *6 (E.D. Cal. Aug. 7,

26  2012) (citing *Bell v. Fowler*, 99 F.3d 262, 271 (8th Cir. 1996)). "Most courts hold that in order to

27  make a 'particularized showing,' moving parties must, at a minimum, 'ordinarily exhaust their

28  allowed number of depositions before making a request for additional' depositions." *Acosta*, 2017

1  WL 8941165, at *7 (quoting *Thykkuttathil v. Keese*, 294 F.R.D. 601, 603 (W.D. Wash. 2013)).

2    In addition, courts consider the factors described in Rule 26(b)(2) of the Federal Rules of

3  Civil Procedure:

4     Under Rule 26(b)(2) the Court will consider whether: (i) the discovery sought is
   unreasonably cumulative or duplicative, or is obtainable from some other source

5     that is more convenient, less burdensome, or less expensive; (ii) the party seeking
   discovery has had ample opportunity by discovery in the action to obtain the

6     information sought; or (iii) the burden or expense of the proposed discovery
   outweighs its likely benefit, taking into account the needs of the case, the amount in

7     controversy, the parties' resources, the importance of the issues at stake in the
   litigation, and the importance of the proposed discovery in resolving the issues.

8  *Guthrey*, 2012 WL 3249554, at *6. To evaluate these factors, courts have looked to the

9  complexity of the legal issues in the case, the amount at stake in the litigation, and the

10  number of parties and claims. *Thykkuttathil*, 294 F.R.D. at 603 ("The breadth and

11  complexity of the case is a factor for the Court to consider in determining whether

12  enlargement is warranted."); *Guthrey*, 2012 WL 3249554, at *7 (no need to enlarge

13  deposition limit for case involving an "an admittedly brief factual occurrence"); *Couch v.*

14  *Wan*, No. 1:08-CV-1621-LJO-DLB, 2011 WL 4499976, at *2 (E.D. Cal. Sept. 27, 2011)

15  (enlargement of limit justified where case "involves multiple plaintiffs, multiple defendants

16  and complex legal issues" concerning "multiple retaliatory acts, threats, harassment and

17  intimidation" spanning "multiple events and multiple individuals"); *Jacobsen v. Katzer*,

18  No. C 06-1905 JSW (JL), 2009 WL 10697750, at *2 (N.D. Cal. June 12, 2009) (increased

19  number of depositions "would be tremendously burdensome on Defendants" and "vastly

20  disproportionate to the amount in controversy").

21    **A.** **Defendants Do Not Dispute That Plaintiff May Take The Depositions Of**

22      **The Inmates Identified In The Joint Statement.**

23    As an initial matter, Defendants do not believe that the proposed depositions of

24  inmates who have made allegations against Cherniss similar to those in Plaintiff's

25  Complaint are at issue in this motion. The Court has previously found that such depositions

26  are relevant at least for the purposes of discovery, and Defendants have stipulated that

27  Plaintiff should be granted leave to take at least one such deposition. (ECF No. 237.) If

28  Plaintiff would like to use his six remaining depositions on Travyon Harbor, Gregory Dyas,

1 Charles Edwards, Daniel Patillo, Victor Cordero, and Timoteo Gomez, Defendants have no

2 further objection. The analysis should thus focus on whether the remaining depositions that

3 Plaintiff seeks are "absolutely necessary," given the complexity of the litigation and their

4 importance in its resolution.

**B.    There Is No Particularized Need For The Identified Non-Inmate Witnesses**
5
**Because The Information Sought From Them Is Cumulative And Has Little**
6 **Importance To The Resolution Of The Case.**

7          Plaintiff would also like to take seven additional depositions, including the

8 depositions of Tracy Sullivan, Tony Lee, Daniel Ross, Von Motschenbacher, Nicole

9 Daniel, Michele Ortega, and CDCR (through a Rule 30(b)(6) deposition). But the

10 prospective value of each of these witnesses in the resolution of this case is, at best,

11 uncertain. This problem is exacerbated because Plaintiff has not yet taken any inmate

12 depositions — it is difficult to tell whether the testimony of correctional staff who

13 investigated an inmate staff complaint, and concluded the complaints were unsubstantiated,

14 would be cumulative or duplicative of that inmate's testimony without first hearing the

15 inmate's testimony.

16          For example, Plaintiff asserts that he would like to take the deposition of Tony Lee,

17 the correctional lieutenant who investigated the Harbor and Edwards staff complaints. In

18 particular, Plaintiff states that Lee: (1) has knowledge of the allegations in those

19 complaints; and (2) made credibility determinations about each of the complaining inmates

20 and witnesses. But neither of these categories of information is non-duplicative or

21 important to the resolution of Plaintiff's claims. If Plaintiff takes Harbor's deposition, for

22 example, he will be able to obtain all the information about the allegations in Harbor's staff

23 complaint. Similarly, he will be able to make his own credibility determinations about

24 Harbor. Lee was not a percipient witness to any of Harbor's allegations, and would only be

25 able to provide testimony about the course of the investigation into those allegations, which

26 is not at issue in this case. Even if the facts of similar instances of sexual assault are

27 relevant to Plaintiff's claims, testimony about the "judgment calls" or other decisions made

28 by Lee long after the alleged conduct occurred will not provide information that will help

1   resolve Plaintiff's claims.

2          Similarly, Plaintiff's proposed deposition of Michele Ortega, who reviewed Lee's

3   investigation findings, would not unearth relevant information. Ortega was not a percipient

4   witness to any incidents involving inmates, nor is there any indication that she was even

5   involved in investigating any inmate allegations. Plaintiff contends that a deposition is

6   necessary to evaluate her decision-making process, but that process has no relevance to

7   Plaintiff's current allegations. It does not make it more or less likely that the allegations in

8   Plaintiff's Complaint are true, and it does not even make it more or less likely that the

9   allegations in, for example, Harbor's staff complaint are true.

10          Plaintiff also seeks to take the deposition of Tracy Sullivan, an employee who filed

11   an EEO complaint against Defendant Cherniss. But Sullivan's testimony would not be

12   beneficial in resolving this case. Plaintiff contends that her testimony would be relevant

13   under Rule 415 of the Federal Rules of Evidence, which allows "evidence that the party

14   committed any other sexual assault of child molestation" in cases "involving a claim for

15   relief based on the party's alleged sexual assault or child molestation." The Rules further

16   define "sexual assault" as "contact, without consent, between any part of the defendant's

17   body—or an object—and another person's genitals or anus." Fed. R. Evid. 413(d)(2).

18   _____. (Declaration of Sean German ("German Decl.")

19   Ex. 9.) Nor would Sullivan's testimony be allowed under Plaintiff's theory that Cherniss

20   has a propensity for breaking rules; such character evidence is inadmissible and irrelevant.

21   Fed. R. Evid. 404(a); *Ahdom v. Lopez*, No. 1:09-CV-01874-AWI-BAM, 2013 WL

22   5406868, at *2 (E.D. Cal. Sept. 25, 2013) (denying motion to compel because "requests

23   appear designed to uncover character evidence, which is inadmissible"). Finally, Plaintiff's

24   contention that Sullivan's testimony would bolster Plaintiff's credibility simply does not

25   make sense because Sullivan's allegations are entirely different in character than

26   Plaintiff's, and _____.

27          Each of these arguments applies even more strongly to Plaintiff's proposed

28   deposition of Nicole Daniel, the employee who initially received Sullivan's complaint.

1   Indeed, a deposition of Daniel would focus almost exclusively on the information she

2   received from Sullivan, and would thus be entirely duplicative of the Sullivan deposition.

3          Likewise, there is no particularized need for a deposition of Von Motschenbacher,

4   who investigated a staff complaint against Defendant Cherniss. The staff complaint, which

5   alleges that Defendant Cherniss _____

6   _____, does not constitute an allegation of "sexual assault"

7   under the Federal Rules of Evidence. (German Decl. Ex. 7.) And Plaintiff has not taken the

8   deposition of the complaining inmate in this instance (or any other inmate), so any

9   assertion that Motschenbacher's testimony would not be cumulative or duplicative is

10  speculative, at best. *Acosta v. Sw. Fuel Mgmt., Inc.*, No. 2:16-CV-4547-FMO (AGRx),

11  2017 WL 8941165, at *7 (C.D. Cal. Sept. 19, 2017) ("speculation and conjecture"

12  inadequate to "make a particularized showing of the need for taking more than ten

13  depositions").

14         Plaintiff also claims that he requires a Rule 30(b)(6) deposition of CDCR to assess

15  CDCR's records regarding complaints against Defendant Cherniss, as well as CDCR's

16  policies and training materials regarding searches and sexual misconduct. First, however,

17  the actual list of topics that Plaintiff has demanded a Rule 30(b)(6) witness appear to testify

18  about goes far beyond the list of topics provided in the joint statement. (German Decl. Ex.

19  12.) For example, the subpoena requires a witness to testify to "[t]he authenticity of all

20  documents produced" by CDCR in this litigation. *Id.* Plaintiff has not shown any

21  particularized need for such a request, which can be easily accomplished through requests

22  for admissions, stipulations between the parties, or through testimony at trial. The topic

23  would also require the designation of multiple witnesses by CDCR because it covers all

24  documents produced so far by CDCR. Thus, this topic alone would place a large burden on

25  CDCR with little value or benefit to Plaintiff. *Jacobsen v. Katzer*, No. C 06-1905 JSW

26  (JL), 2009 WL 10697750, at *2 (N.D. Cal. June 12, 2009) (denying leave to take additional

27  depositions because burden of depositions was "vastly disproportionate" to the value of the

28  depositions).

The list of topics also includes testimony about: (1) the "chain of custody" for all documents produced by CDCR in this litigation; (2) any efforts to preserve all documents produced by CDCR in this litigation, whether or not the preservation of those documents are at issue; (3) all efforts to search for documents produced by CDCR in this litigation, whether or not the searches for those documents are at issue; (4) document preservation policies in effect from 2010 to the present regarding any documents produced by CDCR in this litigation; (5) the history or disposition of any documents responsive to any of the subpoenas directed towards CDCR; and (6) the extent of CDCR's knowledge of this litigation at the time any documents responsive to the subpoenas were altered or destroyed. (German Decl. Ex. 12.) Because CDCR has produced such a wide variety of documents in this litigation, each of these topics would require a large number of different witnesses, and the witnesses would not necessarily overlap between topics. For example, a witness who testified about document preservation policies with respect to medical records would not necessarily be able to testify about how those policies were applied to the medical records in this litigation, nor would they necessarily be able to testify about efforts to search for responsive medical records in this litigation, or the "chain of custody" for those medical records. And that would be only one category of documents — CDCR has also produced in this litigation, among other things, inmate disciplinary documents, inmate appeals, staff complaint investigation reports, training documents, EEO complaints, logbooks, institution operational procedures, sentencing documents, and inmate chronos.

Second, even if the subpoena is limited to an examination regarding the topics Plaintiff cites in the joint statement, the testimony would be duplicative and unnecessary. For example, Plaintiff is seeking testimony about other staff complaints filed against Defendant Cherniss, but CDCR has already produced the known universe of such staff complaints. Plaintiff is deposing a number of inmates who have filed such complaints, and is even seeking to depose individuals who have investigated those staff complaints. It is thus unclear why there is any need for further testimony about the allegations in the staff complaints.

1
**C.   Neither the Complexity of This Case Nor the Timing of the Discovery Process Justify Additional Depositions.**

2   Finally, the complexity of this case simply does not justify more than ten

3   depositions. The disputed facts in this case concern the search of a single inmate that

4   occurred in May 2010. It alleges only two claims — a Fourth Amendment claim and an

5   Eighth Amendment claim — against only two defendants. It is not a class action, and it

6   does not have complex facts. Indeed, cases such as this one typically require only three to

7   four days for trial. Given the absence of any complicating factors in this litigation, no

8   departure from the default rules is justified. *Thykkuttathil v. Keese*, 294 F.R.D. 601, 603

9   (W.D. Wash. 2013) ("The breadth and complexity of the case is a factor for the Court to

10   consider in determining whether enlargement is warranted."); *Guthrey v. California Dep't*

11   *of Corr. & Rehab.*, No. 1:10-CV-02177-AWI-BAM, 2012 WL 3249554, at *7 (E.D. Cal.

12   Aug. 7, 2012) (no additional depositions required where disputed facts constituted an

13   "admittedly brief factual occurrence"); *Roberson v. Bair*, 242 F.R.D. 130, 138 (D.D.C.

14   2007) (courts should presume that deposition limits in the Federal Rules of Civil Procedure

15   were "carefully chosen" and that changes "should be the exception, not the rule").

16   Nor does the number of complaints against Defendant Cherniss or the timing of the

17   production of those complaints weigh in favor of granting additional depositions. Plaintiff

18   first determined that he wanted to take the depositions of non-party inmates when

19   discovery was first reopened, in January 2018. (Motion to Reopen Discovery 5:23-6:1

20   ("Plaintiff previously produced declarations . . . that assert relevant facts regarding

21   Defendant Cherniss's interactions with Plaintiff or Defendant Cherniss's inappropriate

22   search techniques. Plaintiff seeks to depose those witnesses."), ECF No. 214). In particular,

23   Plaintiff identified two of the witnesses, Patillo and Cordero, who now appear on the list of

24   witnesses he would like to depose. *Id.* Similarly, Plaintiff identified Harbor and Dyas as

25   early as April 2018, and moved for leave to take their depositions in May 2018. (Motion

26   for Leave to Take Depositions, ECF No. 223.) CDCR produced full information about any

27   other staff complaints in June 2018, in compliance with the Court's order. (ECF No. 235.)

28   Plaintiff has had enough information to determine that he wanted to take these depositions

1 | such that he has now filed three separate motions to take them, and cannot now argue that

2 | he lacked adequate discovery to decide whether to depose them because of CDCR. Had

3 | Plaintiff taken the depositions at the time the witnesses were identified, the parties (and the

4 | Court, for that matter) would now be in a better position to assess whether additional

5 | depositions are truly necessary for this litigation. Because we lack such information,

6 | however, Plaintiff's motion should be denied.

7 | **V.      MEET-AND-CONFER EFFORTS**

8 |           The parties met and conferred regarding the discovery at issue in this Joint Statement. On

9 | July 19, 2018, counsel for Plaintiff sent an email informing that Plaintiff sought to depose the

10 | witnesses listed above and asked if Defendants would stipulate to the depositions. *See* German

11 | Decl., Ex. 1 at 7. Counsel conferred by email and had multiple exchanges regarding the relevance,

12 | importance, and timing of these depositions from July 19, 2018 through August 8, 2018. *Id.* The

13 | parties were unable to reach an agreement, and counsel for Plaintiff subsequently sent counsel for

14 | Defendant Plaintiff's portion of this joint statement on August 8, 2018.

15 |

16 | DATED: August 15, 2018                          Respectfully submitted,

17 |                                                 */s/ Jason German*

18 |                                                 ELIOT D. WILLIAMS (SBN 290780)
     |                                                 eliot.williams@bakerbotts.com
19 |                                                 JASON R. GERMAN (SBN 280837)
     |                                                 jason.german@bakerbotts.com
20 |                                                 SEAN K. GERMAN (SBN 305692)
     |                                                 sean.German@bakerbotts.com
21 |                                                 **BAKER BOTTS L.L.P.**
     |                                                 1001 Page Mill Road, Suite 200
22 |                                                 Palo Alto, California 94304
     |                                                 Telephone: 1-650-739-7500
23 |                                                 Facsimile:  1-650-739-7699
     |                                                 Attorneys for Plaintiff
24 |                                                 THOMAS JOHN HEILMAN

25 |                                                 */s/ Tyler H. Onitsuka*

26 |                                                 TYLER H. ONITSUKA (SBN 267307)
     |                                                 Tyler.Onitsuka@doj.ca.gov
27 |                                                 **Office of the Attorney General**
     |                                                 1300 I Street
28 |                                                 Sacramento, CA 95814
     |                                                 Telephone: 1-916-210-7557

Facsimile:  1-916-324-5205
Attorneys for Defendants
CHRISTOPHER CHERNISS
LARRY LESANE